**ENERGY SERVICE COMPANY OF BOWIE, INC., Petitioner,**

v.

**SUPERIOR SNUBBING SERVICES, INC., Respondent.**

No. 05–0202.

Supreme Court of Texas.

Argued Dec. 1, 2005.

Decided Aug. 24, 2007.

S. Todd Parks, Sidney H. Davis Jr., Touchstone Bernays Johnston Beall Smith & Stollenwerck, L.L.P., Daniel Lee Gus, Walker Sewell LLP, Gregory R. Ave, Walters, Balido & Crain, L.L.P., Dallas, for petitioner.

R. Lynn Fielder, Fisk & Fielder, Dallas, Stephen J. Wren, Woodruff & Wren, L.L.P., Decatur, for respondent.

Michael A. Golemi, William W. Pugh, Liskow & Lewis, Houston, for amicus curiae.

Justice HECHT delivered the opinion of the Court, in which Chief Justice JEFFERSON, Justice BRISTER, Justice MEDINA, and Justice LANG [1] joined.

■ Since 1963, the Texas Workers' Compensation Act has provided that a

1. Hon. Douglas S. Lang, Justice, Court of      Appeals for the Fifth District of Texas at Dal-

subscribing employer is not liable to indemnify others against an employee's personal injury claim unless it agreed to do so in writing before the injury occurred. Until the Act was overhauled in 1989, it referred to the required agreement as one "executed by the subscriber".[2] The new Act referred instead to an agreement "executed ... with the third party" seeking indemnity.[3] The issue in this case is whether this change was substantive. More particularly, the question is: under section 417.004 of the Texas Labor Code, may a subscribing employer's written agreement to indemnify a person and that person's contractors be enforced by one of those contractors even though the agreement was not executed by that contractor? The trial court answered yes, but the court of appeals disagreed.[4] We agree with the trial court.

Petitioner Energy Service Company of Bowie, Inc. and respondent Superior Snubbing Services, Inc. both provided oilfield services to Mitchell Energy Corporation. In 1996, Superior and Mitchell signed an industry-standard "Master Service Agreement", which provided in part that they would indemnify each other and each other's contractors against their respective employees' personal injury claims arising out of work performed under the Agreement or at the jobsite, even if the indemnitee was at fault.[5] Energy and Mitchell

las, sitting by commission of Hon. Rick Perry, Governor of Texas, pursuant to Section 22.005 of the Texas Government Code.

2. Act of May 20, 1963, 58th Leg., R.S., ch. 437, § 1, 1963 Tex. Gen. Laws 1132 formerly TEX.REV.CIV. STAT. ANN. art. 8306, § 3, amended by Act of May 5, 1983, 68th Leg., R.S., ch. 131, § 1, 1983 Tex. Gen. Laws 613, 614, formerly TEX.REV.CIV. STAT. ANN. art. 8306, § 3(d) ("If an action for damages on account of injury to or death of an employee of a subscriber is brought by such employee, or by the representatives or beneficiaries of such deceased employee, or by the association for the joint use and benefit or itself and such employee or such representative or beneficiaries, against a person other than the subscriber, as provided in Section 6a, Article 8307, Revised Civil Statutes of Texas, 1925, and if such action results in a judgment against such other person, or results in a settlement by such other person, the subscriber, his agent, servant or employee, shall have no liability to reimburse or hold such other person harmless on such judgment or settlement, nor shall the subscriber, his agent, servant or employee, have any tort or contract liability for damages to such other person because of such judgment or settlement, in the absence of a written agreement expressly assuming such liability, executed by the subscriber prior to such injury or death.").

3. Act of Dec. 12, 1989, 71st Leg., 2d C.S., ch. 1, § 4.04, 1989 Tex. Gen. Laws 1, 32–33, formerly TEX.REV.CIV. STAT. ANN. art. 8308–4.04

("If an action for damages is brought by an injured employee, the legal beneficiary of a deceased employee, or an insurance carrier against a third party liable to pay damages for the injury or death as provided by Section 4.05 of this Act and the action results in a judgment against the third party or a settlement by the third party, the employer is not liable to the third party for any reimbursement or damages based on the judgment or settlement unless the employer executed, before the injury or death occurred, a written agreement with the third party to assume the liability."), amended by Act of May 12, 1993, 73rd Leg., R.S., ch. 269, § 1, 1993 Tex. Gen. Laws 987, 1235, now TEX. LAB.CODE § 417.004 ("In an action for damages brought by an injured employee, a legal beneficiary, or an insurance carrier against a third party liable to pay damages for the injury or death under this chapter that results in a judgment against the third party or a settlement by the third party, the employer is not liable to the third party for reimbursement or damages based on the judgment or settlement unless the employer executed, before the injury or death occurred, a written agreement with the third party to assume the liability.").

4. 158 S.W.3d 112 (Tex.App.-Fort Worth 2005).

5. Paragraph 7(b) of the "Master Service Agreement" provided: "Contractor [Superior] shall protect, defend, indemnify and hold

had signed a similar agreement in 1991, containing the identical provision. Each party agreed to support its obligation with liability insurance [6] so that to the extent of coverage obtained the indemnification obligations would not be voided by the Texas Oilfield Anti–Indemnity Act.[7] Superior and Energy did not have a mutual indemnification agreement between themselves, nor was either a party to the other's agreement with Mitchell, but each was covered, as a Mitchell contractor, by the terms of the other's agreement with Mitchell. Thus, Energy agreed to indemnify Mitchell and its contractors, one of which was Superior, against claims by Energy employees, and Superior agreed to indemnify Mitchell and its contractors, one of which was Energy, against claims by Superior employees.

Superior's employee, Daryll Faulk, sued Mitchell and Energy for injuries he suffered in 2000 while working at a Mitchell

Company [Mitchell], its employees, partners, agents, representatives, invitees, contractors and their employees (hereinafter "Company's group") harmless from and against all claims, demands, causes of action, suits or other litigation of every kind and character for injury to or illness or death of and for all damage to, loss or destruction of property of Contractor, its employees, partners, agents, representatives, invitees, contractors, subcontractors and their employees (hereinafter "Contractor's group") which is incident to, arising out of, within the scope of, or in connection with the work to be performed, services to be rendered or materials to be furnished by Contractor's group under this Agreement, or occurring on the worksite(s), regardless of how, when or where such injury, illness, death, damage, loss or destruction occurs; including the sole or concurrent NEGLIGENCE or FAULT of Company or Company's group ... and regardless of whether contractual liability for indemnity or LIABILITY WITHOUT FAULT (including claims arising from premises or worksite liability) is sought to be imposed on Company's group. Likewise Company shall protect, defend, indemnify and hold Contractor's group harmless from and against all claims, demands, causes of action, suits or other litigation of every kind and character for injury to or illness or death of and for all damage to, loss or destruction of property of Company's group which is incident to, arising out of, within the scope of, or in connection with the work to be performed, services to be rendered or materials to be furnished by Company's group under this Agreement or occurring on the worksite(s) regardless of how, when or where such injury, illness, death, damage, loss or destruction occurs; including the sole or concurrent NEGLIGENCE or FAULT of Contractor's group ... and regardless of whether contractual liability for indemnity or LIABILITY WITHOUT FAULT (including claims arising from premises or worksite liability) is sought to be imposed on Contractor's group. Contractor and Company specifically intend that the foregoing obligation to protect, defend, indemnify and hold the other harmless shall cover but not be limited to and shall apply even in the event of (i) the NEGLIGENCE, whether sole, comparative, contributory or concurrent, of Company's group or Contractor's group; (ii) any obligation of either party arising from contractual liability for indemnity or LIABILITY WITHOUT FAULT (including claims arising from premises or worksite liability); and (iii) the sole, comparative, contributory, concurrent, NEGLIGENCE or contractual liability for indemnity or LIABILITY WITHOUT FAULT (including claims arising from premises or worksite liability) of any third party."

6. For example, paragraph 7(c)of the Superior–Mitchell agreement provided: "This indemnity shall be supported by the liability insurance coverage herein required to be furnished by Contractor or such greater amount of insurance (or self-insurance) as Contractor in fact carries. Provided, however, if the work to be performed hereunder subjects this Agreement to [the Texas Oilfield Anti–Indemnity Act], Company agrees to provide insurance or self insurance in an equal amount to that provided by Contractor in support of the mutual indemnities contained herein."

7. Act of May 21, 1973, 63rd Leg., R.S., ch. 646, 1973 Tex. Gen. Laws 1767, formerly Tex. Rev. Civ. Stat. Ann. art. 2212b, §§ 3, 4(a), now, with intervening amendments, Tex Civ. Prac. & Rem.Code §§ 127.001–.007.

wellsite where Superior and Energy were both performing services for Mitchell. Mitchell and Energy settled with Faulk and then sued Superior for indemnity. The trial court severed Mitchell's claims from Energy's. Superior, a subscribing employer, contended that Energy's claim was barred by section 417.004 of the Labor Code.[8] The trial court disagreed and granted summary judgment for Energy for the $330,135.37 in attorney fees and expenses it incurred in the Faulk suit.

The court of appeals reversed and rendered judgment for Superior. It noted that before the Workers' Compensation Act was completely revised in 1989, the predecessor provision to section 417.004 stated that a subscribing employer could not be liable to indemnify a person against an employee's personal injury claim "in the absence of a written agreement expressly assuming such liability, *executed by the subscriber* prior to such injury or death."[9] The court of appeals determined, and Superior acknowledges in its brief, that the statute did not require that the employer's agreement be executed by the person claiming indemnity;[10] the claimant was entitled to indemnity if it was covered by the agreement as an intended beneficiary, such as a contractor of the signatory. But according to the court of appeals, a 1989 change in the provision, carried forward into section 417.004, the current law, precludes liability "unless the employer *executed,* before the injury or death occurred, a written agreement *with the third party* to assume the liability."[11] The court concluded, in effect, that since Superior's indemnification agreement with Mitchell was not executed *by* Energy, it was not executed *with* Energy, and therefore Superior could not be liable to indemnify Energy.[12]

We granted Energy's petition for review to determine whether the Legislature intended, as part of its 1989 overhaul of the Workers' Compensation Act, to make a substantive change in the 26–year–old provision that is now section 417.004.[13] That overhaul, enormously controversial, was not completed until December 1989, in the second called session of the 71st Legislature, after efforts to revise the Act during the regular session and the first special session had failed.[14] But the controversy did not extend to the provision that is now section 417.004. Nothing in the lengthy history of the revision process indicates that the Legislature had any reason to change the substance of that provision.[15]

8. *Supra* note 3.

9. 158 S.W.3d at 114–115; *see supra* note 2 (emphasis added).

10. 158 S.W.3d at 115; Brief for Respondent 14.

11. *Supra* note 3 (emphasis added).

12. 158 S.W.3d at 115–116.

13. 49 Tex. Sup.Ct. J. 7 (Oct. 14, 2005).

14. *See generally Texas Workers' Comp. Comm'n v. Garcia,* 893 S.W.2d 504 (Tex. 1995).

15. As originally introduced in the regular session of the 71st Legislature, the bill to replace the Workers' Compensation Act did not carry forward the provision regarding indemnification agreements in the prior law; the bill was silent on the subject. Tex. H.B. 1, 71st Leg., R.S. (1989). But the House added the language that is now section 417.004 by floor amendment without objection, H.J. OF TEX., 71st Leg., R.S. 466 (1989), and it was included in all bills to replace the Act introduced in the first and second called sessions, Tex. H.B. 1, 71st Leg., 1st C.S. (1989); Tex. S.B. 1, 71st Leg., 1st C.S. (1989); Tex. H.B. 4, 71st Leg., 2d C.S. (1989); Tex. S.B. 2, 71st Leg., 2d C, S. (1989); Tex. S.B. 9, 71st Leg., 2d C.S. (1989); Tex. S.B. 18, 71st Leg., 2d C.S. (1989), including the Senate bill that was ultimately enacted, Tex. S.B. 1, 71st Leg., 2d C.S., 1989 Tex. Gen. Laws 1. During the regular session, after the addition of the present text on the House floor, a Senate subcommit-

The common law allows parties to contract for the benefit of others—in effect, *with* others—if they do so explicitly, and when they do, the beneficiary can enforce the promisor's obligation in his favor as if he were himself a party.[16] The pre–1989 predecessor to section 417.004 was consistent with that rule, allowing indemnification agreements to benefit a party's non-signatory contractors, but the present section, as construed by the court of appeals, is not. Of course, statutes can modify common law rules, but before we construe one to do so, we must look carefully to be sure that was what the Legislature intended.[17]

The Legislature has directed that "[i]n interpreting a statute, a court shall diligently attempt to ascertain legislative intent and shall consider at all times the old law, the evil, and the remedy."[18] Superior has not pointed to anything suggesting that allowing indemnification agreements to cover persons working with the contracting parties was perceived to be an "evil" before the 1989 amendment. Superior argues that a contractor working in the oil field should not be economically pressured into surrendering its statutory immunity from liability for indemnity of an employee's personal injury claims, but the Texas Oilfield Anti–Indemnity Act, enacted in 1973, limits that liability,[19] and noth-

---

tee staff member stated at a hearing that "[t]he third party liability, uh, that, that covers the next several sections—and for the most part that is, uh, current law. The one of the big differences from the current law is the disposition of the attorney's fees." *Hearing on Senate Committee Substitute to Tex. H.B. 1 Before the Committee of the Whole Senate, Subcommittee on Workers' Compensation,* 71st Leg., R.S., Tape 1 at 21 (April 19, 1989) (transcript available from Senate Staff Services Office). In the first called session, a House committee bill analysis stated that the section regarding indemnification "[p]rovides that an employer is not liable to a third party for reimbursement or damages based on a judgment or settlement against the third party for a work-related injury unless the employer has agreed to assume such liability, *as provided in the current law.*" HOUSE COMM. ON BUSINESS AND COMMERCE, BILL ANALYSIS, Tex. H.B. 1, at 10, 71st Leg., 1st C.S. (June 20, 1989) (emphasis added). In the second called session, when the legislation finally passed, a House committee bill analysis noted no difference between the indemnity section and prior law, HOUSE COMM. ON BUSINESS AND COMMERCE, BILL ANALYSIS, Tex. S.B. 1, at 3, 71st Leg., 2d C.S. (Nov. 27, 1989), and the conference committee report stated simply that the section "[p]rovides that an employer is not liable to a third party unless there is a prior written agreement to that effect", CONFERENCE COMM. REPORT, Tex. S.B. 1, at 9, 71st Leg., 2d C.S. (Dec. 12, 1989). The legislative history contains no other pertinent references to the provision.

16. *E.g. Stine v. Stewart,* 80 S.W.3d 586, 589 (Tex.2002) (per curiam); *MCI Telecomms. Corp. v. Texas Utils. Elec. Co.,* 995 S.W.2d 647, 651 (Tex.1999); *see generally* RESTATEMENT (SECOND) OF CONTRACTS § 304 (1981) ("A promise in a contract creates a duty in the promisor to any intended beneficiary to perform the promise, and the intended beneficiary may enforce the duty.").

17. *Cash Am. Int'l, Inc. v. Bennett,* 35 S.W.3d 12, 16 (Tex.2000) ("A statute that deprives a person of a common-law right will not be extended beyond its plain meaning or applied to cases not clearly within its purview. Abrogating common-law claims is disfavored and requires a clear repugnance between the common law and statutory causes of action." (internal quotations and citation omitted)); *Satterfield v. Satterfield,* 448 S.W.2d 456, 459 (Tex.1969) ("While Texas follows the rule that statutes in derogation of the common law are not to be strictly construed, it is recognized that if a statute creates a liability unknown to the common law, or deprives a person of a common law right, the statute will be strictly construed in the sense that it will not be extended beyond its plain meaning or applied to cases not clearly within its purview.").

18. TEX. GOV'T CODE § 312.005.

19. Generally, the Texas Oilfield Anti–Indemnity Act voids certain agreements to indemnify against liability for which the indemnitee or contractors responsible to him are at fault

ing suggests that the Legislature thought those limits should be modified by amending the Workers' Compensation Act in 1989. Superior concedes that restricting such agreements to the parties themselves simply makes the protections such agreements afford much harder and costlier to obtain, especially in a work setting like the oilfield, where many contractors may come and go on a project over a long period of time. Trying to be sure that everyone working at a wellsite has a signed agreement may well be impractical. Superior also concedes that the continued widespread use after 1989 of standard mutual indemnification agreements like those in this case strongly suggests that the industry does not consider the practice an "evil" to be remedied. Indeed, the parties tell us that no one even appears to have noticed the 1989 change in language until this case.

Absent any identifiable reason for a substantive change to have been made in the statutory provision, or any extra-textual indication that one was intended, or any resulting change in industry practice, we think the most reasonable construction of section 417.004 is the same as its pre–1989 predecessors. In these circumstances, we think that when the Legislature required that a subscribing employer contract "with the third party" seeking indemnity, it considered that an agreement intending to cover third party beneficiaries was an agreement with the beneficiaries. The issue for us, of course, is not whether this is good policy, but whether it is what the

Legislature intended by the 1989 amendments. We think it was.

This is not a situation like the one in *Fleming Foods of Texas, Inc. v. Rylander*, where the statutory text admitted of but one meaning, however doubtful it was that the Legislature intended it.[20] In that case, the prior law allowed a person to claim a refund of sales taxes only if he had paid the taxes "directly to the State".[21] The recodified law omitted the quoted phrase, thus ostensibly allowing a refund claim by any taxpayer, even if taxes were made through an intermediary.[22] Consistently, the statute defined "taxpayer" as "a person liable for a tax".[23] Fleming Foods claimed a refund of taxes it had paid, but through a vendor, not directly to the State.[24] Although the Legislature expressly provided that the recodification was nonsubstantive, we held that the plain language of the recodified law could not admit the limitation of the prior law.[25] The revised text gave no indication that the limitation of the prior law might still apply, and a person reading the new statute, unaware of its history, could not reasonably know of the limitation.[26] The statute in this case, unlike that one, is not so clear. An agreement *with* a third party does not necessarily exclude a third party beneficiary not identified expressly by name. Indeed, under the common law, an indemnity agreement could ordinarily include an obligation by the promisor to an unnamed third party beneficiary. The text of section 417.004 would not indicate

unless the agreement is supported by insurance. Liability for a mutual indemnity obligation is limited to the amount of coverage each indemnitor has agreed to obtain, and a unilateral obligation is limited to $500,000. TEX. CIV. PRAC. & REM.CODE §§ 127.003, .005.

20. 6 S.W.3d 278, 283–284 (Tex.1999).

21. *Id.* at 281.

22. *Id.*

23. *Id.*

24. *Id.* at 280.

25. *Id.* at 281, 283–284.

26. *Id.* at 283–284.

to an ordinary reader that the third party was required to sign the agreement.

The dissent argues that construing the 1989 amendment to mean the same thing as the prior law deprives the added phrase, "with the third party", of any meaning. But that argument assumes that the Legislature intended the added phrase to mean something different than existing law, when there is simply no indication that it did. In fact, the words "third party" were inserted throughout the 1989 version to serve as a shorthand substitute for the multiple word descriptions—"a person other than the subscriber" and "such other person"—used throughout the pre–1989 version. The dissent also argues that because the Legislature did not expressly include third party beneficiaries, it must have intended to exclude them. But as we have already explained, the Legislature was charged with the knowledge that the common law would ordinarily include third party beneficiaries, and thus it had no reason to reiterate what was already the law.

The dissent acknowledges that to restrict mutual indemnity obligations to signatories denies them the freedom to contract for the benefit of their contractors, but argues that this is necessary to "protect[ ] them from economic pressures".[27] Since 1973, however, that protection has been provided, to the extent the Legislature has determined it should be in any setting, by the Texas Oilfield Anti–Indemnity Act.[28] That Act expressly contemplates that parties will "agree to indemnify each other and each other's contractors and their employees" and voids only certain indemnities not supported by liability insurance.[29] The dissent argues that the 1989 amendments to section 417.004 further restrict the use of mutual indemnification agreements, but nothing in the language or history of the amendments suggests that such a restriction was intended. To the contrary, amicus curiae Texas Oil and Gas Association has explained the significant policy and practical considerations favoring the use of such agreements:

> [T]ens of thousands of agreements have been entered into by which each party (as "indemnitor") agrees to indemnify the other party ("indemnitee") and the indemnitee's contractors for claims arising from injuries to the indemnitor's employees, regardless of fault. In other words, ... each party in the oilfield takes care of its own "slice of the risk" (claims by its own employees against the other party and its contractors or subcontractors as third party beneficiaries). In return, the indemnitor and the indemnitor's contractors or subcontractors receive a reciprocal indemnity from the indemnitee as third party beneficiaries (for claims by the indemnitee's employees). This approach to risk allocation provides a level of certainty to all of the parties regarding liability exposure because each company is able to train its own employees as to safe oilfield practices, manage its performance of the work, obtain insurance, and attempt to control the scope of its liability arising out of what is usually a common workplace. Liability insurers have also written insurance coverage to accommodate such a risk allocation approach inasmuch as policies typically provide contractual liability coverage for indemnity obligations to third parties.[30]

---

27. *Post* at 200.

28. TEX. CIV. PRAC. & REM.CODE §§ 127.001–.007.

29. *Id.* §§ 127.001(3), .005.

30. Brief for Texas Oil & Gas Ass'n as Amicus Curiae Supporting Petitioners 7–8.

Finally, the dissent argues that section 417.004 cannot be construed solely in the light of practices in the oil field. While we agree that the provision applies to indemnification agreements in other settings, nothing before us remotely suggests that other applications of the statute require a different construction.

*       *       *

Accordingly, the judgment of the court of appeals is reversed, and the case is remanded to the trial court for rendition of judgment in accordance with this opinion.

Justice JOHNSON filed a dissenting opinion, in which Justice WAINWRIGHT, Justice GREEN, and Justice WILLETT joined.

Justice O'NEILL took no part in the decision of the case.

Justice JOHNSON, joined by Justice WAINWRIGHT, Justice GREEN, and Justice WILLETT, dissenting.

Daryll Faulk was injured while working in the course of his employment for Superior Snubbing Services, Inc. (Superior), who carried workers' compensation insurance and thus was a "subscribing employer." Faulk did not sue Superior for his injuries.[1] But he was working at a well site along with employees of Mitchell Energy Corporation (Mitchell), Energy Service Company of Bowie, Inc. (Energy), and others when he was injured. He sued them.

Energy and Superior were contractors for Mitchell. They did not execute agreements with each other, but both executed agreements with Mitchell. Their agreements with Mitchell contained indemnity provisions. As relevant to this appeal, Energy settled with Faulk and sued Superior

for indemnity. Energy claimed that it was entitled to indemnity because Superior's contract with Mitchell provided that Superior "shall protect, defend, indemnify and hold [Mitchell], its employees, partners, agents, representatives, invitees, contractors and their employees ... harmless from and against all claims, demands, causes of action, suits or other litigation of every kind and character for injury to ... [Superior], its employees, partners, agents, ... which is incident to, arising out of, within the scope of, or in connection with the work to be performed."

Superior denied that it owed indemnity to Energy, in part, on the basis of Texas Labor Code section 417.004 and the fact that Energy had not executed an indemnity agreement with Superior. Section 417.004 provides:

> In an action for damages brought by an injured employee, a legal beneficiary, or an insurance carrier against a third party liable to pay damages for the injury or death under this Chapter that results in a judgment against the third party or a settlement by the third party, the employer is not liable to the third party for reimbursement or damages based on the judgment or settlement *unless the employer executed, before the injury or death occurred, a written agreement with the third party to assume the liability.* (emphasis added)

I agree with the court of appeals that section 417.004 does not permit Energy to recover indemnity from Superior.

In construing a statute our objective is to determine and give effect to the Legislature's intent, which, when possible, we discern from the words used. *State v. Shumake,* 199 S.W.3d 279, 284 (Tex.2006);

---

1. The Workers' Compensation Act provides that employees of subscribing employers waive their common law claims against their employer unless the employees elect otherwise. *See* TEX. LAB.CODE § 406.034(a).

*City of San Antonio v. City of Boerne,* 111 S.W.3d 22, 25 (Tex.2003); *State v. Gonzalez,* 82 S.W.3d 322, 327 (Tex.2002); *see also* Tex. Gov't Code § 312.005. We look first to the "plain and common meaning of the statute's words." *Gonzalez,* 82 S.W.3d at 327. If the statute is clear and unambiguous, we must apply its words according to their plain and common meaning without resort to rules of construction or extrinsic aids. *Fitzgerald v. Advanced Spine Fixation Sys., Inc.,* 996 S.W.2d 864, 865–66 (Tex.1999); *St. Luke's Episcopal Hosp. v. Agbor,* 952 S.W.2d 503, 505 (Tex.1997). The statute's words are to be read according to their ordinary meaning unless they are defined otherwise in the statute or a contrary intention is apparent from the context. *See Taylor v. Firemen's and Policemen's Civil Serv. Comm'n of Lubbock,* 616 S.W.2d 187, 189 (Tex.1981). In construing statutes there are instances where courts may disregard the literal meaning of a statute, but that is only when it is perfectly plain that the literal sense works an absurdity or manifest injustice. *Gilmore v. Waples,* 108 Tex. 167, 188 S.W. 1037, 1039 (1916). It is inappropriate for courts to enlarge the meaning of any word in a statute beyond its plain and ordinary meaning by implication when legislative intent may be gathered from a reasonable interpretation of the statute as it is written. *Sorokolit v. Rhodes,* 889 S.W.2d 239, 241 (Tex.1994). We must not give the words used by the Legislature an exaggerated, forced, or constrained meaning. *See City of Austin v. Sw. Bell Tel. Co.,* 92 S.W.3d 434, 442 (Tex.2002). Every word of a statute must be presumed to have been used for a purpose. *Eddins–Walcher Butane Co. v. Calvert,* 156 Tex. 587, 298 S.W.2d 93, 96 (1957). Likewise, every word excluded from a statute must also be presumed to have been excluded for a purpose. *Cameron v. Terrell & Garrett, Inc.,* 618 S.W.2d 535, 540 (Tex.1981).

In my view, the plain meaning of the words used in section 417.004, "the employer is not liable *to the third party* for reimbursement or damages based on the judgment or settlement unless the employer *executed,* before the injury or death occurred, a written agreement *with the third party* to assume the liability" (emphasis added), is clear and unambiguous. The phrase "the third party" is used twice in the same sentence and clearly refers to the same third party in each instance—the third party seeking indemnity. Because the words "executed ... with the third party" in the statute are clear and unambiguous, we apply the words according to their plain and common meaning without resort to rules of construction or extrinsic aids. *Fitzgerald,* 996 S.W.2d at 865–66; *Agbor,* 952 S.W.2d at 505. We should not read the statute's words other than according to their ordinary meaning, because a contrary intention is not apparent from the context. *See Taylor,* 616 S.W.2d at 189. So read, the language precludes indemnity unless the third party was a signatory to the written agreement executed by the subscriber.

Further, we presume all the words in the statute were used purposely by the Legislature. *See Eddins–Walcher Butane Co.,* 298 S.W.2d at 96. For example, the statutory provision in question formerly provided, in relevant part, that if a party other than the subscribing employer made a settlement with the injured employee, then the subscribing employer had no liability to indemnify the third party "in the absence of a written agreement expressly assuming such liability, executed by the subscriber prior to such injury or death." *See* former Tex.Rev.Civ. Stat. Ann. art. 8306 § 3. The same relevant part of the current statute provides that the subscribing employer has no liability to indemnify the third party "unless the employer exe-

cuted, before the injury or death occurred, a written agreement with the third party to assume the liability." TEX. LAB.CODE § 417.004. If the words "with the third party" are omitted when reading the current language of section 417.004, then the section effectively provides the same as did the former statute: in order to be liable for indemnity to a settling third party, the subscribing employer must have executed a written agreement assuming the indemnity obligation before the injury, but the agreement was not required to have been with the third party seeking indemnity. Direct comparison of the two statutory provisions makes it clear that for the phrase "executed ... with the third party" to have meaning, section 417.004 limits the subscribing employer's indemnity obligation to parties who are signatories to the agreement executed by the subscriber.

In a similar vein, because the words "third-party beneficiaries" do not appear in the statute, we presume they were excluded for a purpose. *Cameron*, 618 S.W.2d at 540. Only when it is necessary to give effect to clear legislative intent can we insert, by interpretation, additional words or requirements into a statutory provision. *Id.* And as the Court's opinion demonstrates, even if we look for legislative intent beyond the statutory language itself, we find no clear legislative intent that the words *"executed ... a written agreement with the third party"* were intended to encompass parties not signatories to an agreement.

Nor is it "perfectly plain" that giving the statutory language its literal, plain, and common meaning works an absurdity or manifest injustice. *See Gilmore*, 188 S.W. at 1039. First, the statute effectively provides that parties such as Mitchell who require indemnity agreements from subscribing employers may contract only for their own right to indemnity. That

concept is not absurd. It does not offend established contract presumptions. *See MCI Telecomms. Corp. v. Tex. Utils. Elec. Co.*, 995 S.W.2d 647, 652 (Tex.1999) ("[T]here is a presumption against, not in favor of, third-party beneficiary agreements."); *Corpus Christi Bank & Trust v. Smith*, 525 S.W.2d 501, 503–04 (Tex. 1975) (noting the presumption that parties contract for themselves and not for third-party beneficiaries). And reading the statute according to its plain language, which limits a subscribing employer's indemnity obligation, furthers the main inducement for employers to provide workers' compensation insurance: limited exposure to common-law damage claims of an employee injured in the course of employment. *See* TEX. LAB. CODE § 406.034; *Tex. Workers' Comp. Comm'n v. Garcia*, 893 S.W.2d 504, 510–11 (Tex.1995); *Massey v. Armco Steel Co.*, 652 S.W.2d 932, 933 (Tex.1983) (noting that the Workers' Compensation Act bars an employee's common law action for negligence against his employer). The benefit of a subscribing employer's immunity from claims by an injured employee is diminished whenever the employer is made subject to indemnity claims for common-law damages recovered by the injured employee from third parties. Narrowing the exception to immunity to those parties with whom the employer executed a written agreement is wholly consistent with the overarching theory of workers' compensation: immediate benefits to injured workers in exchange for employer immunity from claims. The former statute did not require the employer to have a pre-injury agreement "executed ... with the third party" before the employer could be called on for indemnity. And the 1989 amendments were not a mere recodification of prior law such as Texas statutes have been undergoing for some years.

*See Fleming Foods of Tex., Inc., v. Rylander,* 6 S.W.3d 278, 283 (Tex.1999) ("In 1963, the Legislature charged the Texas Legislative Council with the task of planning and executing a permanent statutory revision program to 'clarify and simplify the statutes and to make the statutes more accessible, understandable, and usable.' TEX. GOV'T CODE § 323.007(a). The Legislature directed, however, that 'the council may not alter the sense, meaning, or effect of [a] statute.' *Id.* § 323.007(b)."). The 1989 changes to the workers' compensation statute were extensive and controversial. The driving force behind the 1989 changes was the system's increasing cost to employers which had pushed the system to a crisis point. *Garcia,* 893 S.W.2d at 512. Business groups claimed that the increasing cost of compensation insurance forced large businesses to locate operations elsewhere and forced small businesses to cease operations or opt out of coverage. *Id.* The parties and *amicus* Texas Oil and Gas Association naturally focus their arguments on the statute's effects on the oil and gas industry. But the crisis which generated the 1989 changes encompassed all Texas employers. *See id.* Indemnity agreements such as the Mitchell agreement attempt to, in effect, circumvent some of the financial inducement provided by the 1989 changes for employers to become and remain subscribers. One effect of enforcing such broad indemnity agreements is that the subscribing employer pays premiums for workers compensation insurance, yet remains liable for common-law damages to an employee by reason of having to indemnify numerous third parties for judgments or settlements in the employee's common-law damages suit. This case was disposed of in the trial court by summary judgment. The record contains no evidence of how either interpretation of the statute contended for by

the parties might affect the economics of the state's workers' compensation system and its cost to Texas employers. But Superior's workers' compensation policy was part of the summary judgment record. The employer's liability part of the policy excludes coverage for contractually assumed liabilities, which would presumably include liabilities such as the indemnity agreement. Even assuming subscribing employers purchase separate liability insurance to cover contractually assumed indemnity agreements (as was required by Superior's contract with Mitchell) so as to minimize their personal liability for indemnity, the indemnity agreements result in employers paying for both compensation insurance and liability insurance for injuries to its own employees. Intuitively, the broader the indemnity agreement and the greater the exposure to claims, the greater the cost of liability insurance will be to subscribing employers.

The plain language of section 417.004 respects the freedom of subscribing employers to contract away their statutory immunity from liability, yet protects them from economic pressures to enter broad indemnity agreements contracting away their immunity as to third parties with whom the employers do not have direct contractual agreements. The effect of interpreting section 417.004 to include persons or entities who are not signatories and direct parties to the agreements means that subscribing employers signing such indemnity agreements remain in the position they were in before the 1989 amendments: *having no control over whom they may be called upon to indemnify because the owner or other actual contracting party with whom the employers executed the agreements remain able to contract with any third-party contractor they desire.*

Energy asserts that reading the statute to apply only to direct parties to the agreement will be in derogation of the Texas Oilfield Anti–Indemnity Act (TOAIA) [2] and disruptive to the oil and gas industry. But a significant reason for passage of the TOAIA was to protect certain contractors who could not effectively protect themselves from being economically pressured into executing broad indemnity contracts in order to get oilfield work. *See* Tex. Civ. Prac. & Rem.Code § 127.002(a),(b); *Getty Oil Co. v. Ins. Co. of N. Am.,* 845 S.W.2d 794, 802–03 (Tex.1992). The primary thrust of the TOAIA is to generally make certain oilfield indemnification agreements void and unenforceable and to *limit* the enforceability of other such agreements, not to *enhance* enforceability of broad oilfield indemnity agreements. The TOAIA allows enforcement of certain specified types of indemnity agreements subject to its provisions by excluding those types of agreements from the operation of its general language. *See* Tex. Civ. Prac. & Rem. Code §§ 127.003–.005. The TOAIA does not, however, specifically address the anti-indemnity provision of the workers' compensation statutes, much less provide that the TOAIA negates such provision. The closest the TOAIA comes to addressing the workers' compensation anti-indemnity provision is section 127.006, which provides that the TOAIA is *not* intended to affect the validity of an insurance contract or a benefit conferred by the workers' compensation statutes.[3]

In my view, the Court's construction of section 417.004:(1) does not comport with the literal, plain meaning of the statute; (2) dilutes subscribing employers' immunity from common-law damages claims of the employers' injured employees which is a key concept underlying the workers' compensation statutes; and (3) does not square with one of the main reasons for the 1989 revision of the workers' compensation statutes—reducing costs to subscribing employers. I would hold that language in Superior's contract with Mitchell, which requires Superior to indemnify Energy, a nonsignatory to the contract, conflicts with section 417.004 and that, to the extent of the conflict, the contractual language is invalid. I would affirm the judgment of the court of appeals.

---

2. Tex. Civ. Prac. & Rem.Code §§ 127.001–.007.

3. This case does not require us to interpret the language of section 127.006. Superior responds to Energy's argument by positing that statutory abrogation of certain common-law claims an employee might otherwise have against a subscribing employer is a benefit to the employer. Energy points to the definition of "benefit" in the Workers' Compensation Act to argue that it is not.