In The



Court of Appeals



Ninth District of Texas at Beaumont



 ______________________ 


 

NO. 09-07-563 CV


 ______________________


 

IN RE CITGO PETROLEUM CORPORATION


AND STONEBURNER-VERRETT ELECTRIC COMPANY, INC.





Original Proceeding






OPINION 


 This is an original proceeding seeking a writ of mandamus compelling arbitration. 
Rodney Rose and his wife Paula sued Citgo Petroleum Corporation and Stoneburner-Verrett
Electric Company, Inc. for damages relating to an on-the-job injury that Rose alleges he
sustained at a Citgo refinery in Louisiana. Citgo filed a motion to arbitrate in which
Stoneburner later joined. (1) The trial court denied the motion, and relators filed a petition for
writ of mandamus. 


Mandamus


 A writ of mandamus will issue to correct a clear abuse of discretion when no
adequate remedy at law exists. In re FirstMerit Bank, N.A., 52 S.W.3d 749, 753 (Tex. 2001). 
The party seeking a writ of mandamus must bring forth a sufficient record to show the trial
court's abuse of discretion. In re Bill Heard Chevrolet, Ltd., 209 S.W.3d 311, 314 (Tex.
App.--Houston (1st Dist.) 2006, orig. proceeding). Mandamus is proper when the trial court
erroneously denies arbitration under the Federal Arbitration Act. In re D. Wilson Constr.
Co., 196 S.W.3d 774, 780-81 (Tex. 2006). (2) 

The Trial Court's Order


 Pat Tank, Inc. employed Rodney Rose. At the beginning of that employment, Rose
signed a "Dispute Resolution Agreement" containing an arbitration clause. Citgo and
Stoneburner argue they have the right to invoke and enforce the arbitration agreement.

 A party who seeks to compel arbitration of a claim must (a) first establish the
existence of a valid arbitration agreement and (b) show the claim falls within the agreement's
scope. In re FirstMerit Bank, N.A., 52 S.W.3d at 753. The trial court's determination of the
agreement's validity is subject to de novo review. J. M. Davidson, Inc. v. Webster, 128
S.W.3d 223, 227 (Tex. 2003). The reviewing court's primary concern in construing a written
contract is to ascertain the intention of the parties as expressed in the agreement. Id. at 229. 
If a valid agreement exists, the burden shifts to the party opposing arbitration to raise an
affirmative defense. Id. at 227. 

 The trial court held a hearing on relators' motion to compel arbitration and denied the
motion on three grounds: (a) no arbitration agreement exists between Citgo and plaintiffs;
(b) no arbitration agreement exists between Rose and his employer Pat Tank, because Pat
Tank did not sign the agreement; and (c) Citgo waived arbitration. (3) 

The Rose and Pat Tank Arbitration Agreement 


 The "Dispute Resolution Agreement" signed by Rose provides that the document
governs the resolution of all claims and disputes "between and among Employee and
Employer [Pat Tank], and Employer's customer, and clients, . . . and any other person or
entity that has signed this or similar agreement or otherwise agreed to use mediation and/or
arbitration to settle any claims or disputes that may arise between them." In addition, the
agreement states that the "procedures set forth herein" are the sole and exclusive remedies
for resolving all claims between Pat Tank and Rose, as well as all claims against Pat Tank's
customers or clients or the owner of any property on which Rose performed services on Pat
Tank's behalf. The agreement further provides:

 Employer and Employee, by the authorized signatures below, mutually
contract and agree that . . . all claims, disputes and/or controversies, now
existing, or hereafter arising, including the arbitrability of any claim, dispute
or controversy shall be exclusively resolved by the parties first trying to settle
by mediation . . . , failing which, the settlement of the dispute shall be by 
binding arbitration. . . .


 Although Rose signed the agreement, the Roses argue Pat Tank did not assent to the
agreement because a Pat Tank representative did not sign it, and therefore arbitration cannot
be compelled. Rose owed no duty to relators to arbitrate the dispute if a contract was not
formed between Pat Tank and Rose. See Restatement (Second) of Contracts § 309
(1981) ("Defenses Against the Beneficiary"). The Roses contend the dispute resolution
agreement requires that the agreement be signed and witnessed.

 A party's signature on a contract is "strong evidence" that the party unconditionally
assented to its terms. In re December Nine Co., Ltd., 225 S.W.3d 693, 699 (Tex. App.-- El
Paso 2006, orig. proceeding). When a party's signature is not present, other evidence may
be relied on to prove the party's unconditional assent. In re Bunzl USA, Inc., 155 S.W.3d
202, 209 (Tex. App.--El Paso 2004, orig. proceeding). If one party signs a contract, the other
party's acceptance may be demonstrated by its conduct, "thus making it a binding agreement
on both parties." MG Bldg. Materials, Ltd. v. Moses Lopez Custom Homes, Inc., 179 S.W.3d
51, 61-62 (Tex. App.--San Antonio 2005, pet. denied) (citing Hearthshire Braeswood Plaza
Ltd. P'ship v. Bill Kelly Co., 849 S.W.2d 380, 392 (Tex. App.--Houston [14th Dist.] 1993,
writ denied)). The Federal Arbitration Act does not require that an arbitration agreement be
signed, so long as the agreement is written and agreed to by the parties. In re AdvancePCS
Health L.P., 172 S.W.3d 603, 606 (Tex. 2005) (citing 9 U.S.C.A. § 3 (West 1999)). 

 By affidavit, Pat Tank's president, Hans Jorgensen, stated that the company's policy
requires that a dispute between the company and its employees be resolved in the manner set
forth in the dispute resolution agreement. He further explained that "[t]ypically, an applicant
for employment is asked to read, and if they agree, sign the [dispute resolution agreement]
in connection with their application for employment." Pat Tank considered the agreement
"binding upon it and its employees once the employee has signed the agreement and started
their employment with Pat Tank." Jorgensen acknowledged that occasionally, even though
an employee has signed the agreement, Pat Tank may not have signed it. That omission, he
stated, is "not an indication of Pat Tank's intent not to abide by its own dispute resolution
policy." Jorgensen's affidavit explains the absence of the signature, and Pat Tank's
employment of Rose demonstrates Pat Tank's acceptance of the contract. See generally
Stinson v. Am.'s Home Place, Inc., 108 F.Supp.2d 1278, 1283 (M.D. Ala. 2000); see also In
re Bunzl, 155 S.W.3d at 211 n.4. 

 The Roses rely on In re Bunzl. The Bunzl court concluded that the absence of Bunzl's
signature, along with contract language requiring that any modification or amendment of the
agreement be in writing and signed by the parties, was evidence the parties did not intend to
be bound by the agreement until both parties signed it. In re Bunzl, 155 S.W.3d at 211. The
agreement here has similar language. The issue in this case is not one of amendment,
modification, or ratification, however, but whether Pat Tank assented to the contract at its
inception. The evidence establishes Pat Tank's assent. 

 Rose relied on the validity of the agreement when offering it as an exhibit at a
worker's compensation proceeding relating to his injury. (4) Having affirmatively used the
"Dispute Resolution Agreement" to support a claim based on the same injury, Rose's
challenge to the existence of the agreement based solely on the lack of a signature for Pat
Tank is not persuasive. See In re Weekley Homes, L.P., 180 S.W.3d 127, 131-32 (Tex.
2005); see generally In re Kellogg Brown & Root, Inc., 166 S.W.3d 732, 739 (Tex. 2005)
(Even a non-signatory plaintiff seeking the benefits of a contract is estopped from
simultaneously attempting to avoid the contract's burdens, including the obligation to
arbitrate disputes.). Rose makes no other challenge to the formation or existence of the
arbitration agreement with Pat Tank. 


Scope of Arbitration Agreement


 "Doubts regarding an agreement's scope are resolved in favor of arbitration because
there is a presumption favoring agreements to arbitrate under the FAA." In re Kellogg
Brown & Root, Inc., 166 S.W.3d at 737. The question here is whether the parties intended
to require arbitration of Rose's claims against relators and to give relators the right to enforce
the agreement even though they are not signatories to the contract. 

 Citgo argues it has the right to compel arbitration, because the agreement references
claims against "customer[s] or clients" of Pat Tank, or "the owner of any property upon
which Employee has performed service[s] on behalf of Employer." Rose was employed by
Pat Tank and was doing work for Pat Tank on Citgo's premises when he sustained the injury. 
 The Supreme Court has held that a third party may enforce a contract only if (a) the
parties intended to secure a benefit to that third party and (b) the contracting parties entered
into the contract directly for the third party's benefit. Stine v. Stewart, 80 S.W.3d 586, 589
(Tex. 2002) (citing MCI Telecomms. Corp. v. Tex. Util. Elec. Co., 995 S.W.2d 647, 651-52
(Tex. 1999)). We "will not create a third-party beneficiary contract by implication." MCI
Telecomms. Corp., 995 S.W.2d at 651. The agreement must clearly and fully express an
intent to confer a direct benefit to the third party. Stine, 80 S.W.3d at 589. Incidental
benefits flowing from a contract to a third party do not confer the right to enforce the
contract. South Tex. Water Auth. v. Lomas, 223 S.W.3d 304, 306 (Tex. 2007). As the
Supreme Court has explained, "The common law allows parties to contract for the benefit
of others -- in effect, with others -- if they do so explicitly, and when they do, the beneficiary
can enforce the promisor's obligation in his favor as if he were himself a party." Energy Serv.
Co. of Bowie, Inc. v. Superior Snubbing Servs., Inc., 236 S.W.3d 190, 194 (Tex. 2007) (citing
Stine, 80 S.W.3d at 589; MCI Telecomms. Corp., 995 S.W.2d at 651); see also In re Palm
Harbor Homes, Inc., 195 S.W.3d 672, 677 (Tex. 2006) (The intent to benefit the third party
was clear because the agreement expressly provided that it "inure[d] to the benefit of the
manufacturer of the Home."). 

 "A promise in a contract creates a duty in the promisor to any intended beneficiary to
perform the promise, and the intended beneficiary may enforce the duty." Restatement
(Second) of Contracts § 304 (1981); Superior Snubbing Servs., 236 S.W.3d at 194 n.16. 
Although a third party must be more than an incidental beneficiary, a beneficiary is not
required to show that the parties executed the contract solely for its benefit. Stine, 80 S.W.3d
at 591. The focus is on whether a recognition of the right to performance in the beneficiary
gives effect to the intent of the parties in entering the contract. See Restatement (Second)
of Contracts § 302 (1981). Courts consider whether performance of the promise will
satisfy an obligation of the promisee to pay money to the third party, or the circumstances
indicate an intent to give the third party the benefit of the promised performance. See id.;
Stine, 80 S.W.3d at 589. 

 The language in the dispute resolution agreement in this case refers to customers and
clients generally, and to an owner of property where Rose worked for Pat Tank. Pat Tank
and Rose agreed the document would govern the resolution of all claims and disputes
"among Employee and Employer, and Employer's customer, and clients[.]" Although the
contract does not name Citgo specifically, the agreement is sufficiently clear to establish that
the parties intended to cover entities in this category and the record establishes Citgo is a
customer or client of Pat Tank. Rose was working on Citgo's property for Pat Tank at the
time of the incident involved in this claim. 

 "It is not essential to the creation of a right in an intended beneficiary that he be
identified when a contract containing the promise is made." Restatement (Second) of
Contracts § 308 (1981). Identification of an intended beneficiary is made at the time
enforcement of the right is sought. Stine, 80 S.W.3d at 591. If the beneficiary cannot be
identified when the contract is made, that may be relevant to determining whether the
contract was intended to benefit the party. The burden falls on the party seeking arbitration
as a third-party beneficiary to show it is one to whom the parties intended to confer the
contractual rights. See id. at 589. "If parties to a contract agree to confer certain contractual
benefits on a third party, that third party may invoke the contract's arbitration clause." In re
Rolland, 96 S.W.3d 339, 344 (Tex. App.--Austin 2001, orig. proceeding) (citing Hoffman
v. Deloitte & Touche, L.L.P., 143 F.Supp.2d 995, 1004 (N.D. Ill. 2001)). 

 The Roses rely on In re Bayer Materialscience, LLC, No. 01-07-00732-CV, 2007 WL
3227662 (Tex. App.--Houston [1st Dist.] Nov. 1, 2007, orig. proceeding). There, the First
District Court of Appeals in a similar fact situation found the non-signatory company (Bayer)
was not a third-party beneficiary to an at-will-employment dispute resolution agreement
between the contractor Brock and its employee. Id. at **1-2. The language in the Bayer
contract and the Pat Tank/Rose contract is similar. Id. at **1-3. The contract in that case
lacked language specifically naming Bayer as a beneficiary and providing Bayer with the
right to sue to enforce arbitration. See id. Bayer was considered merely an incidental
beneficiary. 

 The Court in Bayer held as follows:

 On this record, Bayer [the non-signatory company seeking arbitration] does not
attempt to show that Brock [the contractor-employer] had any legal obligation
to Bayer to require Brock employees to arbitrate disputes they might have with
Bayer, or that including Bayer in the DRA was necessary to satisfy any legal
duty. Bayer does not maintain, for example, that it required contractor
employees to execute arbitration agreements as a condition of entry onto its
premises, or of providing scaffolding and painting services to it. Without
more, Bayer's relationship with Brock as one of its customers is insufficient
to confer the right to enforce the agreement Brock made with its employees. 
Cf. In re Merrill Lynch, 50 Tex. Sup. Ct. J. 1030, 2007 WL 2424845 at *3
(declining to enforce arbitration against non-signatory corporate affiliates,
holding that '[a] corporate relationship is generally not enough to bind a
nonsignatory to an arbitration agreement.'). Bayer is merely an incidental
beneficiary of the DRA. 

 

Bayer, 2007 WL 3227662, at *4. 

 Here, Citgo provided the trial court with its contract with Pat Tank, which was signed
prior to the dispute resolution agreement and related to the work being performed by Rose
on Citgo's premises at the time of the accident. Pat Tank's contract with Citgo set out certain
duties that Pat Tank had with respect to Pat Tank's employees, including training, 
supervision, safety, and limitation of work areas. As to Pat Tank's employees working on
Citgo's premises, as was Rose, the Citgo contract named Citgo as a "statutory employer"
under Louisiana law. 

 In the contract, Pat Tank agreed to indemnify Citgo for damages, including
arbitrator's fees, arising out of Pat Tank's employees' claims against Citgo. Pat Tank's
contractual duty to indemnify Citgo suggests one reason Pat Tank would intend to give Citgo
the right to enforce the arbitration agreement between Pat Tank and Rose. A claim made by
a Pat Tank employee against Citgo may ultimately, though indirectly, be paid by Pat Tank
under the indemnity contract. 

 The circumstances indicate an intent to give Citgo the benefit of Rose's promise to
arbitrate. See Restatement (Second) of Contracts § 302 (1981). Recognition of a right
to performance in Citgo of the arbitration promise effectuates the intent of the parties to
arbitrate their claims and disputes. See id. We conclude Citgo is an intended third-party
beneficiary of the dispute resolution agreement with Rose. 

 Stoneburner maintains it is also covered by the agreement because it is a vendor under
the dispute resolution agreement. The agreement defines "employer" to include Pat Tank's
vendors. Stoneburner did not explain to the trial judge why the parties intended it to have
third-party beneficiary status. Stoneburner presented no written contract with Pat Tank,
offered no evidence of contract duties, and did not establish that it was more than an
incidental beneficiary. The fact that the dispute resolution agreement includes non-signatory
vendors within its sweep does not, without more, demonstrate Stoneburner's status as an
intended third-party beneficiary. See Bayer, 2007 WL 3227662, at *4. On this record,
Stoneburner has not established the trial court abused its discretion in denying Stoneburner's
motion to compel arbitration.

 Waiver


 The Roses' waiver of arbitration argument presents a question of law. (5) In re Serv.
Corp Int'l, 85 S.W.3d 171, 174 (Tex. 2002) (quoting In re Bruce Terminix Co., 988 S.W.2d
702, 703-04 (Tex. 1998)); "'[T]here is a strong presumption against waiver,' and where it
exists, waiver must be intentional." In re Bank One, N.A., 216 S.W.3d 825, 827 (Tex. 2007)
(quoting EZ Pawn Corp. v. Mancias, 934 S.W.2d 87, 89 (Tex. 1996)). Generally, delay
alone does not establish waiver. In re Vesta Ins. Group, Inc., 192 S.W.3d 759, 763 (Tex.
2006). 

 To establish waiver, the Roses must show that Citgo substantially invoked the judicial
process to the Roses' detriment or prejudice. See In re Bank One, N.A., 216 S.W.3d at 827. 
 "Substantially invoking the judicial process can occur when the proponent of arbitration
actively tried, but failed, to achieve a satisfactory result in litigation before turning to
arbitration." Williams Indus., Inc. v. Earth Dev. Sys. Corp., 110 S.W.3d 131, 135 (Tex.
App.-- Houston [1st Dist.] 2003, no pet.). If a party takes unfair advantage of discovery
proceedings that would not have been available in arbitration, the conduct may constitute
sufficient prejudice to infer waiver. Structured Capital Res. Corp. v. Arctic Cold Storage,
LLC, 237 S.W.3d 890, 895 (Tex. App.--Tyler 2007, orig. proceeding) (citing Tenneco Resins,
Inc. v. Davy Int'l, AG, 770 F.2d 416, 421 (5th Cir. 1985)). A court should not ordinarily
infer waiver based on prejudice if a party seeking arbitration has conducted only a minimal
amount of discovery, and the party opposing arbitration has not met its burden of showing
sufficient prejudice. See In re D. Wilson Constr. Co., 196 S.W.3d at 783. 

 Citgo acknowledges it took the depositions of Rodney and Paula Rose and responded

to written discovery propounded by the Roses. Citgo asserts it did not propound any written
discovery to the Roses. The Roses assert Citgo subpoenaed records from medical providers,
but it is not clear what information was obtained that would not be useful in an arbitration
proceeding. Along with its answer, Citgo filed a motion to dismiss, arguing the case should
have been filed in Louisiana. The motion, if granted, would not have disposed of the claim
on the merits. 

 Although the Roses' attorney informed the trial court at the hearing on the arbitration
motion that the Roses had "put a considerable amount of money and effort into getting this
case to trial[,]" "[g]eneralized complaints about delay and expense, absent explanations and
evidentiary support, will not establish prejudice." Structured Capital Res. Corp., 237 S.W.3d
at 896; see also Tex. Residential Mortgage, L.P. v. Portman, 152 S.W.3d 861, 864 (Tex.
App.--Dallas 2005, no pet.) (Party urging waiver of arbitration identified no work that she
had done or cost she incurred in anticipation of trial that she would not have done or incurred
in anticipation of an arbitration hearing.); Associated Glass, Ltd. v. Eye Ten Oaks Invs., Ltd.,
147 S.W.3d 507, 514 (Tex. App.--San Antonio 2004, orig. proceeding) (Party urging waiver
of arbitration did not submit any evidence to the trial court to support its claim of prejudice
from "increased and 'destructive' discovery expenses" and thereby failed to show prejudice.);
Transwestern Pipeline Co. v. Horizon Oil & Gas Co., 809 S.W.2d 589, 592 (Tex. App.--Dallas 1991, writ dism'd w.o.j.) (Party who voluntarily incurred legal fees by initiating suit
did not show prejudice.). The general statement regarding money and effort put into the case
does not establish sufficient prejudice to overcome the strong presumption against waiver. 
See In re Vesta Ins. Group, 192 S.W.3d at 763. The Roses have not shown Citgo waived
arbitration. 

Conclusion


 Stoneburner's request for a writ of mandamus is denied. We conditionally grant
Citgo's petition for a writ of mandamus and direct the trial court to enter an order granting
Citgo's motion to compel arbitration. We are confident the trial court will comply. The writ
will issue only if the court does not. 

 PETITION CONDITIONALLY GRANTED IN PART AND DENIED IN PART.

 PER CURIAM

Submitted on November 28, 2007 

Opinion Delivered February 21, 2008


Before Gaultney, Kreger and Horton, JJ.
1. The relators in this mandamus proceeding are Citgo and Stoneburner-Verrett; the
Roses are the real-parties-in-interest.
2. The Roses do not contest that the Federal Arbitration Act applies to this contract. 
The FAA preempts the party/attorney signature requirement of the Texas Arbitration Act in
personal injury cases. See In re Nexion Health at Humble, Inc., 173 S.W.3d 67, 69-70 (Tex.
2005); Tex. Civ. Prac. & Rem. Code Ann. § 171.002 (Vernon 2005) (TAA is inapplicable
to personal injury claims unless signed by each party and each party's attorney.).
3. Although the order denying arbitration does not mention Stoneburner, Stoneburner
joined in Citgo's motion to arbitrate and argued in favor of arbitration at the hearing. The
reporter's record of the hearing demonstrates the trial court denied arbitration as to both
Citgo and Stoneburner. See generally In re Mata, 212 S.W.3d 597, 604 (Tex. App.--Austin
2006, orig. proceeding); In re Wheeler, 177 S.W.3d 350, 354 (Tex. App.--Houston [1st Dist.]
2005, orig. proceeding).
4. Although Rose did not expressly mention the arbitration clause at the worker's
compensation hearing, he presented the dispute resolution agreement as an exhibit and, in
seeking to obtain worker's compensation benefits in Texas, relied on the agreement.
5. We need not address the waiver issue as it relates to Stoneburner-Verrett, because
notwithstanding any waiver issue, Stoneburner did not show entitlement to arbitration.