IN THE
TENTH COURT OF APPEALS
No. 10-11-00105-CV


REBECCA LUCHAK, R.N. AND
CYNTHIA HUNTER, R.N.,

Appellants

v.

BOBBY MCADAMS, INDIVIDUALLY AND
AS AN HEIR AND REPRESENTATIVE ON
BEHALF OF THE ESTATE OF TINA MCADAMS,
DECEASED, AND AS NEXT FRIEND OF SAVANNAH
MCADAMS, A MINOR AND HEIR OF THE ESTATE
OF TINA MCADAMS, DECEASED; RYAN MCADAMS,
AND JARED MCADAMS, INDIVIDUALLY AND AS
HEIRS OF THE ESTATE OF TINA MCADAMS, DECEASED,

Appellees

**And**

No. 10-11-00106-CV

HATTIE JOHNSON, R.N.,

Appellant

v.

BOBBY MCADAMS, INDIVIDUALLY AND
AS AN HEIR AND REPRESENTATIVE ON
BEHALF OF THE ESTATE OF TINA MCADAMS,
DECEASED, AND AS NEXT FRIEND OF SAVANNAH
MCADAMS, A MINOR AND HEIR OF THE ESTATE
OF TINA MCADAMS, DECEASED; RYAN MCADAMS,
AND JARED MCADAMS, INDIVIDUALLY AND AS HEIRS
OF THE ESTATE OF TINA MCADAMS, DECEASED,

Appellees

## OPINION

Bobby McAdams[1] sued several parties, including three nurses, Rebecca Luchak, Cynthia Hunter, and Hattie Johnson, in two separate cases regarding the death of McAdams' daughter, Tina.[2] The nurses filed a motion pursuant to section 101.106(f) of the Civil Practice and Remedies Code contending they were employees of a governmental unit and that the suit against the nurses must be dismissed.[3] The trial court denied the motion and the nurses appeal. Because the trial court erred in denying the nurses' motion to dismiss, the trial court's order is reversed and an order is rendered that McAdams' suits against the nurses are dismissed.

### JURISDICTION

We first address a portion of McAdams' cross-point which questions whether we have jurisdiction of this appeal. His primary argument is that the nurses are not

---

[1] Although additional capacities and individuals are named as plaintiffs in the suits, we refer to the plaintiffs/appellees as "Bobby McAdams" or "McAdams."

[2] Rebecca Luchak and Cynthia Hunter were sued in trial court case number 25,245 (appellate number 10-11-00105-CV) and Hattie Johnson was sued in trial court case number 24,771 (appellate number 10-11-00106-CV).

[3] Although the motion was styled, "Defendants' Motion to Substitute Their Employer in Place of Individually-Named Hospital Employees," the relief requested was a dismissal of the suits filed against the nurses.

governmental employees. This argument is also the key to the nurses' contention that the trial court erred in denying their motion to dismiss. McAdams' secondary argument, the argument that we address at this juncture, is that even if the nurses are governmental employees, the Civil Practice and Remedies Code provides no means to appeal the motion the nurses filed.

The nurses filed a motion pursuant to section 101.106, the Election of Remedies provision, of the Civil Practice and Remedies Code and sought dismissal of the lawsuits filed against them. Section 101.106(f) specifically provides,

> If a suit is filed against an employee of a governmental unit based on conduct within the general scope of that employee's employment and if it could have been brought under this chapter against the governmental unit, the suit is considered to be against the employee in the employee's official capacity only. On the employee's motion, the suit against the employee shall be dismissed unless the plaintiff files amended pleadings dismissing the employee and naming the governmental unit as defendant on or before the 30th day after the date the motion is filed.

TEX. CIV. PRAC. & REM. CODE ANN. § 101.106(f) (West 2011).

McAdams argues that a denial of such a motion is not appealable because it is interlocutory and section 51.014 of the Civil Practice and Remedies Code does not provide for an appeal from the denial of a section 101.106 motion. We disagree with McAdams.

Section 51.014(a) allows an appeal from an interlocutory order . . . that:

\* \* \*

(5) denies a motion for summary judgment that is based on an assertion of immunity by an individual who is an officer or employee of the state or a political subdivision of the state; [or]

\* \* \*

(8) grants or denies a plea to the jurisdiction by a government unit . . . .

TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(5), (8) (West Supp. 2011).

The Texas Supreme Court has held that under section 51.014(a)(8), "an interlocutory appeal may be taken from a refusal to dismiss for want of jurisdiction whether the jurisdictional argument is presented by plea to the jurisdiction or some other vehicle, such as a motion for summary judgment." *Tex. Dep't of Criminal Justice v. Simons,* 140 S.W.3d 338, 349 (Tex. 2004) (citing *Harris County v. Sykes*, 136 S.W.3d 635 638 (Tex. 2004) ("If the trial court denies the governmental entity's claim of no jurisdiction, whether it has been asserted by a plea to the jurisdiction, a motion for summary judgment, or otherwise, the Legislature has provided that an interlocutory appeal may be brought.")). "The reference to 'plea to the jurisdiction' is not to a particular vehicle but to the substance of the issue raised." *Id.*

Recently, the Court, when reviewing the denial of a motion pursuant to section 101.106(e), expanded its holding in *Simons* and concluded that an appeal may likewise be taken from orders denying an assertion of immunity, as provided in section 51.014(a)(5), regardless of the procedural vehicle used. *Austin State Hosp. v. Graham*, 347 S.W.3d 298, 301 (Tex. 2011). It reasoned that "[t]he point of section 51.014(a)(5), like

section 51.014(a)(8), is to allow an interlocutory appeal from rulings on certain issues, not merely rulings in certain forms." *Id.*

Although the nurses brought a motion to dismiss pursuant to subsection (f) rather than subsection (e) of section 101.106, the result is the same. In both subsections, the employee is entitled to dismissal due to immunity. *Compare* TEX. CIV. PRAC. & REM. CODE ANN. § 101.106(f) (West 2011) *with* (e) ("If a suit is filed under this chapter against both a governmental unit and any of its employees, the employees shall immediately be dismissed on the filing of a motion by the governmental unit."). Thus, if an interlocutory appeal is allowed by section 51.014(a)(5) from the denial of a motion to dismiss under subsection (e), it necessarily follows that an appeal from the denial of a motion to dismiss under subsection (f) is also allowed by section 51.014(a)(5). We see no reason to hold otherwise. Because the nurses asserted immunity in their motion which was denied, they are entitled to appeal, regardless of the procedural vehicle used, if they are employees of a governmental unit.

### GOVERNMENTAL UNIT

The next question, the answer to which will resolve both McAdams' cross-point regarding jurisdiction and the nurses' issue on appeal, is: are the nurses considered employees of a governmental unit? If so, then we have jurisdiction of the interlocutory appeal and the trial court should have granted the nurses' motion to dismiss. If not, we have no jurisdiction of this appeal and the appeal must be dismissed.

The nurses contend that they are employees of a governmental unit because they work for Walker County Hospital Corporation d/b/a Huntsville Memorial Hospital. They argue that WCHC is a hospital district management contractor which is considered a governmental unit for the purposes of the Texas Tort Claims Act and whose employees are considered employees of a hospital district. The Health and Safety Code provides:

> A hospital district management contractor in its management or operation of a hospital under a contract with a hospital district is considered a governmental unit for purposes of Chapters 101, 102, and 108, Civil Practice and Remedies Code, and any employee of the contractor is, while performing services under the contract for the benefit of the hospital, an employee of the hospital district for the purposes of Chapters 101, 102, and 108, Civil Practice and Remedies Code.

TEX. HEALTH & SAFETY CODE ANN. § 285.072 (West 2010). The Code's definition of a "hospital district management contractor" is as follows:

> In this chapter, "hospital district management contractor" means a nonprofit corporation, partnership, or sole proprietorship that *manages or operates a hospital or provides services under contract* with a hospital district that was created by general or special law.

TEX. HEALTH & SAFETY CODE ANN. § 285.071 (West 2010) (emphasis added).

The parties agree that the Walker County Hospital District (District) is a governmental unit. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 101.001(3) (West Supp. 2011); *Martinez v. Val Verde County Hosp. Dist.*, 140 S.W.3d 370, 371 (Tex. 2004). They do not agree, however, that the nurses were employed by a governmental unit. Specifically, McAdams contends WCHC is not a governmental unit because it is not a

Luchak, Hunter, and Johnson v. McAdams                                                    Page 6

hospital district management contractor, and even if it was, the nurses did not work for it.

### *Case Authority*

There is not much case authority on sections 285.071 and 285.072 of the Health and Safety Code, and none of those cases are directly on point with this case. For example, in *Maldonado v. Frio Hosp. Ass'n*, no dispute existed between the parties about whether the appellee met the statutory classification of a hospital district management contractor. *Maldonado v. Frio Hosp. Ass'n*, 25 S.W.3d 274, 276 (Tex. App.—San Antonio 2000, no pet). In *Rodriguez v. Christus Spohn Health System Corp.*, the parties on appeal also did not contest the district court's determination that the appellee was a hospital district management contractor. *Rodriguez v. Christus Spohn Health System Corp.*, 628 F. 3d 731, 734 (5th Cir. 2010). Further, in *Carroll v. Donau*, the parties agreed that the hospital was a governmental unit because it was managed under a contract with the hospital district. *Carroll v. Donau*, No. 03-09-00293-CV, 2010 Tex. App. LEXIS 6063 (Tex. App.—Austin July 29, 2010, pet. denied) (mem. op.). None of these cases analyzed how to determine whether an entity was a hospital district management contractor.

One case comes close to the question we have here. In *Christus Spohn Health Sys. Corp. v. Ven Huizen*, the Ven Huizens filed suit against a hospital corporation, a nurse, and a doctor regarding injuries that occurred to their daughter at the time of her birth. *Christus Spohn Health Sys. Corp. v. Ven Huizen*, 2011 Tex. App. LEXIS 3805 (Tex. App.

Corpus Christi May 19, 2011) (pet. denied). Spohn filed a plea to the jurisdiction and a motion to dismiss with respect to the Ven Huizens' claims against Spohn and Dulak, asserting that Spohn was a "hospital district management contractor" and was entitled to immunity as a "governmental unit." *Id.* *3. The trial court denied Spohn's motions.

On appeal, the Corpus Christi court reviewed the evidence submitted in support of the motions which included the affidavit of the controller of finance for Spohn who stated that from 1996 until the present, Spohn had provided services at the Nueces County Hospital District hospital, formerly known as Memorial Medical Center, under a contract with the Nueces County Hospital District. *Id*. *12. Under the master and lease agreements between the hospital district and Spohn, Spohn managed and provided care to all patients at Memorial. *Id*. The agreement also mandated that Spohn was to take sole control of and responsibility for all aspects of the management and operation of the Hospital. *Id*. The Court held that the evidence established that the hospital district vested Spohn with the duty and responsibility of managing the hospital. *Id*. *13. However, this determination was unnecessary because the Ven Huizens did not actually argue that Spohn failed to meet the "technical" requirements of a hospital district management contractor; instead, they argued that section 285.071 was inapplicable to the contracts between Spohn and the hospital district because the contracts designated Spohn an independent contractor. *Id*. *14. On this issue, the Corpus Christi court held that Spohn's contractual relationship with the hospital

district, that of independent contractor, did not negate the applicability of sections 285.071 and 285.072. *Id*. *19.

Although, the actual issue in controversy was not about whether Spohn was a hospital district management contractor, this case is instructive as to how to determine whether WCHC is a hospital district management contractor but is not controlling in the type of evidence considered to support a determination of a hospital district management contractor.

### *History—Huntsville Memorial Hospital*

For us to determine whether WCHC is a hospital district management contractor, and thus considered to be a governmental unit, we have to look at the history between the hospital in Huntsville and the District.

Huntsville Memorial Hospital (HMH) was incorporated in 1927. It entered into a "Lease, Mortgage, Deed of Trust, Assignment of Production and Security Agreement" with the Walker County Hospital District in 1977 and a new hospital was built. As expressed in the lease agreement, it was the intent of the parties that HMH be associated or affiliated with or controlled by the District. The new hospital was leased to HMH and HMH was to operate and maintain the hospital in an economical and efficient manner consistent with standards generally acceptable for fully accredited hospitals. HMH agreed that it would run the hospital in accordance with the act that created the District which charged the District with the responsibility of providing

hospital care for the needy inhabitants of Walker County. HMH also agreed to provide for the management of the hospital, as long as any bonds issued for the establishment of the new hospital were outstanding, in one of two ways: (1) by employing a hospital management company, or (2) by submitting a plan for the management of the hospital by administrative personnel directly responsible to HMH.

After reviewing the lease agreement between HMH and the District, HMH was a hospital district management contractor because HMH managed or operated the hospital under the lease agreement with the District.

### Walker County Hospital Corporation

But where does Walker County Hospital Corporation (WCHC) fit in the picture? WCHC was established in 2005 as a non-profit Texas corporation. It was organized for charitable purposes and is exempt from Federal income tax. Further, its assumed name was registered as Huntsville Memorial Hospital. Robert E. Gray, Jr., the Chief Financial Officer of WCHC stated by affidavit[4] that in 2006, a majority of assets held in HMH were shifted to WCHC. As a part of the shift, WCHC assumed the Lease, Mortgage, Deed of Trust, Assignment of Production and Security Agreement made by and between HMH and the District. As per the lease agreement, HMH was allowed to

---

[4] McAdams suggests in his brief on appeal that we should not consider Gray's affidavit because it was late filed which deprived him of the opportunity to contest it. The document to which the affidavit was attached was filed on February 10, 2011. Further, a response by McAdams to that document was filed on March 3, 2011 and specifically addressed Gray's affidavit but did not complain about its alleged late filing. The hearing on the nurses' motion was held on March 4, 2011. McAdams did not seek a continuance of the hearing, did not request additional discovery, and did not object to the affidavit. Accordingly, any complaint about the affidavit is not preserved. TEX. R. APP. P. 33.1.

transfer to another non-profit corporation all or substantially all of its assets if, among other things, the transferee corporation assumed all the obligations of HMH contained in the lease agreement. An amendment to the lease agreement entered into on October 25, 2006 indicated that HMH and WCHC entered into a transfer agreement on August 31, 2005 which transferred all of HMH's rights in the lease agreement to WCHC and that the District, on the same date, executed a consent authorizing the transfer.

### VHA Southwest and Memorial Hermann Healthcare System

McAdams argues that because two other entities, VHA Southwest Community Health Corporation (Southwest) and Memorial Hermann Healthcare System (MHHS), were involved in the management of the hospital, WCHC could not ultimately be a hospital district management contractor. In 2004, and before HMH transferred its rights in the lease agreement with the District to WCHC, HMH and the District entered into a Hospital Operating Agreement with Southwest. On the same date, Southwest and the District entered into an Executive Management Agreement with MHHS. We do not agree with McAdams that the agreements with these other entities prevent WCHC from being a hospital district management contractor.

Pursuant to the operating agreement, HMH granted Southwest membership in the HMH Corporation. Southwest set the number of board of directors for the hospital. And although it reserved some powers for itself to perform oversight responsibility of the ongoing operations for HMH, there was nothing in the reserved powers which

suggested that Southwest had the power to hire or fire employees. HMH retained employees who were employed by HMH at the time the operating agreement was signed, and HMH was to establish competitive benefit packages for their employees. All employees that were retained were to receive credit for the time they had been employed by HMH prior to the date of the agreement for determining benefits and other personnel matters.

Pursuant to the management agreement, MHHS was to provide hospital administrators. It was agreed that all HMH employees would remain employees of and carried on the payroll of HMH. These employees were not to be employees of MHHS. The final decision making authority relating to medical staff membership was exclusively the responsibility of HMH. HMH was responsible for the quality of hospital care provided. Further, HMH and Southwest would employ or retain and have sole employment responsibilities for their respective personnel.

*Conclusion*

The definition for a hospital district management contractor is very broad and includes any type of management or operation of a hospital or any kind of provision of services either of which are pursuant to a contract with a hospital district. Although some management and operation responsibilities were designated to Southwest and MHHS, HMH was still responsible for some of the operation of the hospital. The critical fact in the analysis is that, at the very least, HMH provided services under a

contract with the District. *See* TEX. HEALTH & SAFETY CODE ANN. § 285.071 (West 2010). The addition of Southwest and MHHS to the operation or management of certain aspects of the hospital did not change HMH's status.

Further, WCHC is a non-profit corporation. Because it assumed HMH's lease with the District and all of HMH's rights in the lease with the District were transferred to WCHC, it, too, falls within the definition of a hospital district management contractor. Thus, WCHC is a governmental unit for the purposes of the Texas Tort Claims Act. *See* TEX. HEALTH & SAFETY CODE ANN. § 285.072 (West 2010).

## EMPLOYMENT OF THE NURSES

At her deposition, Hattie Johnson stated that she worked for Huntsville Memorial Hospital. The printed payroll histories for Rebecca Luchak and Cynthia Hunter show that they also work for Huntsville Memorial Hospital. McAdams argues that these documents show the nurses do not work for WCHC. We disagree. WCHC has the assumed name of Huntsville Memorial Hospital, and because HMH transferred most of its assets and its interest in the lease agreement with the District to WCHC and WCHC assumed the lease agreement between HMH and the District, the nurses are employees of WCHC. As additional evidence that the nurses are, in fact, employees of WCHC, the W2 forms for each nurse lists the employer as "Walker County Hospital Corp DBA HMH."

## CONCLUSION

WCHC is a hospital district management contractor, a governmental unit as defined by the statute. *See* TEX. HEALTH & SAFETY CODE ANN. § 285.072 (West 2010). The nurses are employees of WCHC. Because the nurses are employees of WCHC, a hospital district management contractor, they are considered to be employees of the District, a governmental unit. *Id*. Accordingly, we have jurisdiction of this appeal and the trial court erred in denying the nurses motion to dismiss them from the suits filed against them by McAdams. McAdams' cross-point is overruled, and the nurses' sole issue is sustained.

Having overruled the cross-point of McAdams and sustained the sole issue of the nurses, we reverse the trial court's order denying their motion to dismiss and render an order that Rebecca Luchak and Cynthia Hunter are dismissed from trial court case number 25,245 and Hattie Johnson is dismissed from trial court case number 24,771.


TOM GRAY
Chief Justice

Before Chief Justice Gray,
     Justice Davis, and
     Justice Scoggins
Reversed and rendered
Opinion delivered and filed February 1, 2012
[CV06]