SUE WALKER, JUSTICE
I. INTRODUCTION
This is an interlocutory appeal from the denial of Appellant Baylor Scott & White a/k/a Baylor Health Care System's (BHCS) plea to the jurisdiction based on governmental immunity. See generally Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(8) (West Supp. 2017) (allowing appeal from interlocutory order that grants or denies a plea to the jurisdiction by a governmental unit). We address a single, narrow issue.[1] We assume that BHCS is a "hospital district management contractor" under the definition set forth in Texas Health and Safety Code section 285.071, and we address whether, as such, BHCS qualifies for the governmental immunity statutorily created by Texas Health and Safety Code section 285.072. See Tex. Health & Safety Code Ann. §§ 285.071, .072 (West 2017). Because *245 BHCS's affiliation agreement with Decatur Hospital Authority d/b/a Wise Regional Health System (Wise Regional) expressly prohibits BHCS from managing or operating any aspect of Wise Regional, and because BHCS is not a hospital district management contractor that manages or operates Wise Regional, BHCS does not possess governmental immunity from suit under section 285.072 in the underlying negligence action filed by Appellee Kimberly D. Peyton; we will therefore dismiss this appeal for lack of jurisdiction.
II. FACTUAL AND PROCEDURAL BACKGROUND
After suffering negative effects from opiate over-sedation during a total left knee arthroplasty at Wise Regional, Peyton filed suit against multiple defendants, including BHCS. Peyton alleged that, among other things, BHCS was negligent because it had failed to properly train the nursing staff as required by BHCS's affiliation agreement with Wise Regional.
BHCS filed a plea to the jurisdiction. BHCS asserted that by virtue of Texas Health and Safety Code section 285.072, BHCS had been statutorily declared to be a governmental unit for purposes of the Texas Tort Claims Act (TTCA). Claiming governmental unit status, BHCS argued that Peyton failed to provide BHCS with a notice of claim as required by the TTCA and that Peyton's claims do not fall within the waiver of immunity provided by the TTCA, so that the trial court lacks jurisdiction over BHCS.
Peyton filed a response to BHCS's plea to the jurisdiction. Peyton argued that BHCS's affiliation agreement with Wise Regional conveyed no managerial responsibilities or operational authority to BHCS and that, accordingly, no facts exist enabling BHCS to qualify for the governmental immunity created by section 285.072.
After hearing argument and reviewing the pleadings, the trial court signed an order denying BHCS's plea to the jurisdiction. This interlocutory appeal followed.
III. BHCS IS NOT ENTITLED TO GOVERNMENTAL IMMUNITY
In its sole issue, BHCS argues that the trial court erred by denying its plea to the jurisdiction because it is a hospital district management contractor-as that term is defined in Texas Health and Safety Code section 285.071 -and that, as such, Texas Health and Safety Code section 285.072 declares it to be a governmental unit entitled to immunity under the TTCA.
A. Standard of Review
Governmental immunity from suit defeats a trial court's subject-matter jurisdiction and is properly asserted in a plea to the jurisdiction. Tex. Dep't of Parks & Wildlife v. Miranda , 133 S.W.3d 217, 225-26 (Tex. 2004). Whether a court has subject-matter jurisdiction and whether a plaintiff has alleged facts that affirmatively demonstrate a trial court's subject-matter jurisdiction are questions of law. Id. at 226. We therefore review de novo a trial court's ruling on a jurisdictional plea. Id. This standard mirrors our summary-judgment standard under Texas Rule of Civil Procedure 166a(c) and places the burden on the movant to meet the standard of proof to show the trial court lacks subject-matter jurisdiction. Id. at 228.
When a plea to the jurisdiction challenges the existence of jurisdictional facts, we consider relevant evidence submitted by the parties when necessary to resolve the jurisdictional issues raised, as the trial court is required to do. See Bland Indep. Sch. Dist. v. Blue , 34 S.W.3d 547, 555 (Tex. 2000). If the evidence creates a fact question regarding the jurisdictional *246 issue, then the trial court cannot grant the plea to the jurisdiction, and the fact issue will be resolved by the factfinder. Miranda , 133 S.W.3d at 227-28. However, if the relevant evidence is undisputed or fails to raise a fact question on the jurisdictional issue, the trial court rules on the plea to the jurisdiction as a matter of law. Id. at 228.
B. Applicable Law
1. The Law on Governmental Immunity and Hospital District Management Contractors
Governmental immunity protects constitutionally or legislatively-created institutions, agencies, or organs of government from suit and liability. See Tex. Civ. Prac. & Rem. Code Ann. § 101.001(3)(D) (West Supp. 2017). The TTCA provides a limited waiver of governmental immunity. See ion index="10" url="https://cite.case.law/citations/?q=Tex.%20Code%20Ann.%20%C2%A7%20101.001">id. § 101.021 (West 2011). To recover under the TTCA, a claimant must provide proper notice to the governmental unit unless the governmental unit has actual notice of the harm suffered by the claimant. See id. § 101.101 (West 2011).
In 1991, the legislature enacted chapter 285 of the health and safety code, setting forth special provisions relating to hospital districts. See Act of May 25, 1991, 72nd Leg., R.S., ch. 523, § 1, 1991 Tex. Gen. Laws 1806, 1806-07 (amended 2003) (current version at Tex. Health & Safety Code Ann. §§ 285.071 -.072). Under the current 2003 version of the statute, a "hospital district management contractor" is
a nonprofit corporation, partnership, or sole proprietorship that manages or operates a hospital or provides services under contract with a hospital district that was created by general or special law.
See Tex. Health & Safety Code Ann. § 285.071. Under section 285.072, sovereign immunity as a governmental unit exists for hospital management contractors under certain circumstances:
A hospital district management contractor in its management or operation of a hospital under a contract with a hospital district is considered a governmental unit for purposes of Chapters 101, 102, and 108, Civil Practice and Remedies Code, and any employee of the contractor is, while performing services under the contract for the benefit of the hospital, an employee of the hospital district for the purposes of Chapters 101, 102, and 108, Civil Practice and Remedies Code.
See itation index="15" url="https://cite.case.law/citations/?q=Tex.%20Code%20Ann.%20%C2%A7%20285.072">id. § 285.072.
2. The Law on Construing Statutes and Contracts
The Texas Supreme Court has concisely set forth how we are to construe statutes:
Our goal is to determine and give effect to the [l]egislature's intent. We look to and rely on the plain meaning of a statute's words as expressing legislative intent unless a different meaning is supplied, is apparent from the context, or the plain meaning of the words leads to absurd or nonsensical results. Words and phrases must be "read in context and construed according to the rules of grammar and common usage." We construe statutes so that no part is surplusage, but so that each word has meaning. We presume "the [l]egislature chooses a statute's language with care, including each word chosen for a purpose, while purposefully omitting words not chosen." We also take statutes as we find them and refrain from rewriting text chosen by the [l]egislature.
Pedernal Energy, LLC v. Bruington Eng'g, Ltd. , 536 S.W.3d 487, 491-92 (Tex. 2017) (internal citations omitted).
*247 Similarly, "[t]he goal of contract interpretation is to ascertain the parties' true intent as expressed by the plain language they used." See Great Am. Ins. Co. v. Primo , 512 S.W.3d 890, 893 (Tex. 2017). We examine the entire agreement in an effort to harmonize and give effect to all provisions of the contract so that none will be meaningless. MCI Telecomms. Corp. v. Tex. Utils. Elec. Co. , 995 S.W.2d 647, 652 (Tex. 1999). In doing so, we give contract terms "their plain and ordinary meaning unless the instrument indicates the parties intended a different meaning." Reeder v. Wood Cty. Energy, LLC , 395 S.W.3d 789, 794-95 (Tex. 2012) (quoting Dynegy Midstream Servs., Ltd. P'ship v. Apache Corp. , 294 S.W.3d 164, 168 (Tex. 2009) ).
C. Analysis
1. BHCS's Status as a Hospital District Management Contractor under Section 285.071 Is Not Challenged
Peyton does not challenge that BHCS meets the definition of a hospital district management contractor in section 285.071. See Tex. Health & Safety Code Ann. § 285.071. The parties agree that BHCS "provides services under contract [the affiliation agreement] with a hospital district [Wise Regional] that was created by general or special law." See id. We therefore focus our analysis on whether BHCS qualifies for immunity under section 285.072. See itation index="23" url="https://cite.case.law/citations/?q=Tex.%20Code%20Ann.%20%C2%A7%C2%A7%20285.071">id. § 285.072.
2. BHCS Does Not Qualify for Immunity under Section 285.072
As set forth above, a hospital district management company is entitled to governmental immunity under the TTCA "in its management or operation of a hospital under a contract with a hospital." See id. ("A hospital district management contractor in its management or operation of a hospital under a contract with a hospital district is considered a governmental unit" under the TTCA) (emphasis added).
a. Concession and the Contract
At the hearing on its plea to the jurisdiction, BHCS conceded that it does not operate or manage Wise Regional:
[W]hat the Plaintiff[ ] ha[s] argued, your Honor, is that [BHCS] is not entitled to governmental immunity because [BHCS] does not operate or manage Wise Regional Health System. And that is true, your Honor. We don't dispute that. In fact, our corporate representative in our affiliation agreement sets out that [BHCS] does not manage or [BHCS] does not operate Wise Regional, but what [BHCS] does do is provide services under a contract with a hospital district, and that meets the definition of hospital district management contractor entitled to TTCA protections.
....
First of all, we are in agreement that [BHCS] does not operate or manage Wise Regional, so there is not a fact issue.
Likewise, the affiliation agreement between BHCS and Wise Regional expressly states that BHCS does not own, operate, manage, or control Wise Regional. The affiliation agreement requires BHCS to "make available to" Wise Regional "the following affiliation benefits:" VHA-Southwest sponsorship, advisory services, architectural and construction project bids, physician recruitment, and continuing education. The advisory services may include consultation in areas such as cancer care, cardiology, and "quality/safety." But in at least three different places, the affiliation agreement expressly prohibits BHCS from activities constituting management or operation *248 of Wise Regional. The affiliation agreement provides:
B. If [Wise Regional] elects to identify itself as an affiliate of BHCS as permitted above, [Wise Regional] will provide to all inpatients and outpatients at [Wise Regional] a written form, to be signed by the patient or [his] representative, that (i) [Wise Regional] is not owned, operated[,] or managed by BHCS , Baylor University Medical Center[,] or any of their subsidiaries ...; (ii) BHCS or its subsidiaries do[ ] not provide any patient care services at [Wise Regional]; and[ ] (iii) no physician providing any patient care at [Wise Regional] is an employee or agent of BHCS or its subsidiaries.
....
10. Independent Contractors. The parties enter into this agreement as independent contractors and neither party shall be deemed an employee, agent, partner, joint venture[,] or other representative of the other. Neither party shall exercise any management control over the operations and patient care of the other nor supervise or control the work of any employee or member of the medical staff of the other party . ... Neither party nor its employees shall be subject to the employee rules or be entitled to the employee benefits of the other party. Neither party may bind the other party to any obligation without the prior written consent of the other party.
....
23. Management and Control. Notwithstanding anything to the contrary contained herein, [Wise Regional]'s administration and Board of Directors shall retain full control of management of [Wise Regional] operations .... [Emphasis added.]
The last paragraph of the affiliation agreement includes a merger clause, stating that "[t]his Agreement constitutes the entire agreement between the parties." BHCS does not point to a single provision in its affiliation agreement with Wise Regional, nor have we found one, in which the parties indicated any intention for any of the consultation services provided by BHCS under the contract to constitute an exception to the explicit provisions agreed to by BHCS and Wise Regional stating that "[Wise Regional] is not owned, operated[,] or managed by BHCS" and that "[Wise Regional]'s administration and Board of Directors shall retain full control of management of [Wise Regional] operations."
b. No Management or Operation
Despite its trial-court concession and the express no-management-or-control-by-BHCS language in the affiliation agreement, BHCS argues on appeal that the services it provided to Wise Regional under the affiliation agreement constitute "aspects of hospital management and operation[.]" BHCS claims that it provided the services of "formulation and enforcement of nursing policies and procedures and the training and supervision of nurses."[2] But *249 we have not located, and BHCS has not cited, any provision of the affiliation agreement delegating those tasks to BHCS. Instead, the affiliation agreement requires BHCS to "make available to" Wise Regional the "affiliation benefits" of VHA-Southwest sponsorship, advisory services, architectural and construction project bids, physician recruitment, and continuing education.
In an effort to categorize the "affiliation benefits" BHCS agreed to provide to Wise Regional as constituting the management or operation of Wise Regional, BHCS points out that the terms "management" and "operation" are not defined in sections 285.071 or 285.072 ; BHCS urges us to look to "what Texas regulations require of hospitals," specifically the Texas Administrative Code, to determine what constitutes management or operation of a hospital. See id. §§ 285.071, 285.072. When a statute fails to define a term, we give that term its common and ordinary meaning; we do not define the term as incorporating and superimposing regulations from a different statute. See Reeder , 395 S.W.3d at 794-95 ; Monsanto Co. v. Cornerstones Mun. Util. Dist. , 865 S.W.2d 937, 939 (Tex. 1993). We decline to superimpose all of the duties required of hospitals that are set forth in the Texas Administrative Code as encompassed within the definition of the terms "management" and "operation" as those terms are used in sections 285.071 and 285.072. See, e.g. , 25 Tex. Admin. Code Ann. §§ 133.41 - .49 (setting forth operational requirements for licensed hospitals).
Applying contract interpretation principles and giving effect to the parties' intentions as expressed in the affiliation agreement-including the above-quoted provisions-the agreement unambiguously and expressly states that BHCS does not manage or operate Wise Regional in any respect. See Great Am. Ins. Co. , 512 S.W.3d at 893 ; MCI Telecomms. Corp. , 995 S.W.2d at 652. Wise Regional expressly retained all management and operations of the hospital; paragraph 23 of the affiliation agreement provided that notwithstanding anything to the contrary in the agreement, "[Wise Regional]'s administration and Board of Directors shall retain full control of management of [Wise Regional] operations. " [Emphasis added.] We cannot agree with BHCS's contention that the nurse training services-that BHCS agreed to provide to Wise Regional under the affiliation agreement and that Peyton pleaded BHCS was negligent in performing-are managerial or operational in nature. As a matter of law, BHCS was not, as it conceded in the trial court, engaged in the "management or operation of a hospital under a contract with a hospital district." See Tex. Health & Safety Code Ann. § 285.072 (providing that hospital district management contractor "in its management or operation of a hospital under a contract with a hospital district is considered a governmental unit").
c. Construction of Sections 285.071 and 285.072
(1) BHCS's and Peyton's Competing Constructions
Finally, BHCS argues that it is entitled to governmental immunity under section 285.072 solely because the parties agree that it meets section 285.071 's definition of a hospital district management contractor. BHCS points out that the definition of a hospital district management *250 contractor recognizes two categories of hospital district management contractors: entities that "manage[ ] or operate[ ] a hospital ... under a contract with a hospital district" and those that "provide[ ] services" under a contract with a hospital district. See itation index="32" url="https://cite.case.law/citations/?q=Tex.%20Code%20Ann.%20%C2%A7%20285.072">id. § 285.071. BHCS contends that its status as a hospital district management contractor that "provides services" automatically entitles it to the immunity conferred by section 285.072.
Recall that section 285.072 provides:
A hospital district management contractor in its management or operation of a hospital under a contract with a hospital district is considered a governmental unit for purposes of Chapters 101, 102, and 108, Civil Practice and Remedies Code, and any employee of the contractor is, while performing services under the contract for the benefit of the hospital, an employee of the hospital district for the purposes of Chapters 101, 102, and 108, Civil Practice and Remedies Code.
See id. § 285.072 (emphasis added).
BHCS relies upon the "provides services" language in section 285.071 's definition of hospital district management contractor and upon the language of section 285.072 italicized above to argue that "[t]he circumstances under which a hospital district management contractor is considered a governmental unit include actions related to the 'management or operation' of a hospital as well as the performance of 'services under the contract for the benefit of the hospital.' "
Peyton, on the other hand, relies upon the language of section 285.072 bolded above to argue that although section 285.071 creates two categories of hospital district management contractors, only those engaged in the management or operation of a hospital are entitled to immunity. Peyton argues that the italicized language relied upon by BHCS relates solely to the immunity status of an employee of a hospital district management contractor that is engaged in the management or operation of a hospital under the previously-mentioned, management-or-operation contract with a hospital district. That is, Peyton contends that the "contract" mentioned in the second italicized portion of section 285.072 -stating that "an employee of the hospital district while performing services under the contract for the benefit of the hospital is an employee of the hospital district"-necessarily refers back to the hospital district's contract with a hospital district management contractor for the management or operation of a hospital. Peyton points out that the construction of section 285.072 urged by BHCS would create the absurd result of permitting a hospital district's window washer or lawn care service provider to conceivably ask for immunity, and "[c]ertainly that's not what the statute ... was ever intended to do."
(2) Plain Language of Section 285.072
Looking to and relying on the plain meaning of section 285.072 's words as expressing legislative intent, as we are required to do, the plain language of section 285.072 requires the hospital district management contractor to manage or operate a hospital under a contract with a hospital district in order to obtain the status of a governmental unit. See id. (providing that hospital district management contractor "in its management or operation of a hospital under a contract with a hospital district is considered a governmental unit"); see also Riemenschneider v. E. Tex. Med. Ctr.-Crockett, Inc. , No. 12-14-00113-CV, 2015 WL 9591519, at *2, *4 (Tex. App.-Tyler Dec. 30, 2015, pet. denied) (mem. op.) (holding ETMCC qualified for governmental immunity under section 285.072 because its contract-a lease-with the hospital *251 district expressly contemplated that "ETMCC would operate the hospital and be 'responsible' for the day-to-day operations of the hospital"); Luchak v. McAdams , 379 S.W.3d 361, 366, 367 (Tex. App.-Waco 2012, pet. dism'd) (holding that Walker County Hospital Corporation qualified as a hospital district management contractor because it was a nonprofit corporation that, with the consent of the hospital district, assumed all of the rights of Huntsville Memorial Hospital-a hospital district management contractor operating the hospital under a lease with the hospital district); Christus Spohn Health Sys. Corp. v. Ven Huizen , No. 13-10-00400-CV, 2011 WL 1900174, at *5 (Tex. App.-Corpus Christi May 19, 2011, pet. denied) (mem. op.) (holding that Spohn was entitled to immunity under section 285.072 because its contract with the hospital district vested Spohn with the duty and responsibility of assuming sole control of the management of Memorial Hospital).
(3) Subchapter F
Likewise, looking to the entirety of subchapter F of chapter 285-that is, construing sections 285.071 and 285.072 together, as we must, to construe the subchapter so that no part is surplusage-the parties' competing surplusage arguments are readily apparent. See Columbia Med. Ctr. of Las Colinas, Inc. v. Hogue , 271 S.W.3d 238, 256 (Tex. 2008) (stating that statute should not be construed to render any part meaningless). The definition of a "hospital district management contractor" set forth in section 285.071 includes an entity like BHCS that simply "provides services under contract with a hospital district." See Tex. Health & Safety Code Ann. § 285.071 (defining hospital district management contractor as "a nonprofit corporation ... that manages or operates a hospital or provides services under contract with a hospital district") (emphasis added).[3]
BHCS urges us to construe subchapter F of chapter 285 by incorporating the "or provides services" language of section 285.071 's definition of a hospital district management contractor into section 285.072 's statutory creation of immunity despite section 285.072 's express limitation of that grant of immunity to "a hospital district management contractor in its management or operation of a hospital under a contract with a hospital district," which makes the "in its management or operation of a hospital" language of section 285.072 surplusage. The construction of subchapter F of chapter 285 urged by Peyton, on the other hand, effectively makes surplusage of the "or provides services"
*252 language contained in section 285.071 's definition of hospital district management contractor because the "or provides services" category of hospital district management contractors will never fall within the category of hospital district management contractors granted immunity in section 285.072. Faced with these competing constructions, we consider the prior, 1991 version of subchapter F for guidance. See Energy Serv. Co. of Bowie, Inc. v. Superior Snubbing Servs., Inc. , 236 S.W.3d 190, 194 (Tex. 2007).
(4) Prior Version of the Statute
"The [l]egislature has directed that '[i]n interpreting a statute[,] a court shall diligently attempt to ascertain legislative intent and shall consider at all times the old law, the evil, and the remedy.' " See ids="8363952" index="41" url="https://cite.case.law/sw3d/236/190/#p194">id. (quoting Tex. Gov't Code Ann. § 312.005 (West 2013) ). Before courts will construe amended statutes to make substantive changes to prior statutes or to common-law rules, they must look carefully to be sure that was what the legislature intended. Id. Absent any identifiable reason for a substantive change to have been made in the statutory provision, any extratextual indication that one was intended, or any resulting change in industry practice, the most reasonable construction of the statute is the same as its predecessor. Id. Additionally, while Texas follows the rule that statutes in derogation of the common law are not to be strictly construed, when a statute creates a liability unknown at common law, or deprives a person of a common-law right, the statute will be strictly construed in the sense that it will not be extended beyond its plain meaning or applied to cases not clearly within its purview. Smith v. Sewell , 858 S.W.2d 350, 354 (Tex. 1993) (citing Tex. Gov't Code Ann. § 312.006(b) ; Dutcher v. Owens , 647 S.W.2d 948, 951 (Tex. 1983) ; and Satterfield v. Satterfield, 448 S.W.2d 456, 459 (Tex. 1969) ). That is, the legislature is certainly free to modify or abrogate common-law rules via statutes, but we are to construe a statute as doing so "only when that was what the [l]egislature clearly intended." Abutahoun v. Dow Chem. Co. , 463 S.W.3d 42, 51 (Tex. 2015).
The original, 1991 version of subchapter F of chapter 285 of the Texas Health and Safety Code provided:
SUBCHAPTER F. LIABILITY OF NONPROFIT MANAGEMENT CONTRACTOR
Sec. 285.071. DEFINITION. In this chapter, "hospital district management contractor" means a nonprofit corporation, partnership, or sole proprietorship that manages a hospital or provides services as part of a rural health network as defined under 42 U.S.C. Section 1395i-4(g) under contract with a hospital district that was created by general or special law and that has a population under 50,000.
Sec. 285.072. LIABILITY OF A HOSPITAL DISTRICT MANAGEMENT CONTRACTOR. A hospital district management contractor and any employee of the contractor are, while performing services under the contract for the benefit of the hospital, employees of the hospital district for purpose of Chapters 101 and 102, Civil Practice and Remedies Code.
See Act of May 25, 1991, 72nd Leg., R.S., ch. 523, § 1, 1991 Tex. Gen. Laws 1806, 1806-1807 (amended 2003).
The prior, original version of section 285.071, which is set forth above, defines a hospital district management contractor as including the same entities as the current statute-a nonprofit corporation, a partnership, or a sole proprietorship. Compare Act of May 25, 1991, 72nd Leg., R.S., ch. 523, § 1, 1991 Tex. Gen. Laws 1806, 1806-1807 *253 (amended 2003), with Tex. Health & Safety Code Ann. § 285.071. And the prior version, like the current version, defines a hospital district management contractor as one of the designated entities "that manages a hospital." Compare Act of May 25, 1991, 72nd Leg., R.S., ch. 523, § 1, 1991 Tex. Gen. Laws 1806, 1806-1807 (amended 2003), with Tex. Health & Safety Code Ann. § 285.071. The prior version, however, limits the nonmanagement services that a designated entity may provide and still fall within the definition of a hospital district management contractor to "services as part of a rural health network as defined under 42 U.S.C. Section 1395i-4(g)." See Act of May 25, 1991, 72nd Leg., R.S., ch. 523, § 1, 1991 Tex. Gen. Laws 1806, 1806-1807 (amended 2003).
When the prior, original version was enacted in 1991, a "rural health network" was defined as "an organization-(1) consisting of-(A) at least 1 hospital ... and (B) at least 1 facility ... and (2) the members of which have entered into agreements regarding-(A) patient referral and transfer, (B) the development and use of communications systems, ... and (C) the provision of emergency and non-emergency transportation among the members." See Omnibus Budget Reconciliation Act of 1989, Pub. L. No. 101-239, § 1820, 103 Stat. 2106 (current version at 42 U.S.C.A. § 1395i-4(g) (West 2012) ). In the current, amended, 2003 version of section 285.071, the legislature deleted the language "as part of a rural health network as defined under 42 U.S.C. Section 1395i-4(g)" but left the verbiage on either side of this phrase. See Tex. Health & Safety Code Ann. § 285.071 (defining hospital district management contractor as an entity that "provides services [as part of a rural health network as defined under 42 U.S.C. Section 1395i-4(g)] under contract with a hospital district.").[4] The 2003 legislature did not, however, correspondingly broaden section 285.072 's narrow grant of governmental unit status. That is, despite its deletion of the phrase "as part of a rural health network as defined under 42 U.S.C. Section 1395i-4(g)" from section 285.071, the 2003 legislature did not expand section 285.072 to also provide governmental unit status for hospital district management contractors that "provide services [ ] under contract with a hospital district." See itation index="58" url="https://cite.case.law/citations/?q=Tex.%20Code%20Ann.%20%C2%A7%C2%A7%20285.071">id. § 285.072. Instead, the 2003, current version of section 285.072 statutorily creates governmental immunity only for "a hospital district management contractor in its management or operation of a hospital." Id.
Looking solely to the 1991 version of sections 285.071 and 285.072 and applying them to the facts here, it is clear that BHCS would not qualify for governmental immunity under the prior version of the statute. As set forth above, BHCS is not engaged in the management or operation of Wise Regional; in fact, BHCS's contract with Wise Regional expressly prohibits such conduct by BHCS. And BHCS's contract *254 with the hospital district does not indicate that it is providing services as part of a rural health network as that term was defined under 42 U.S.C. § 1395i-4(g).
Before we can construe the amended, 2003 version of sections 285.071 and 285.072 to make substantive changes to the prior version of these statutory provisions or to the common law-that is, before we construe sections 285.071 and 285.072 to grant immunity to BHCS that it would not be entitled to under the prior version of these provisions-we must look carefully to be sure that was what the legislature intended.[5] See Energy Serv. Co. of Bowie, Inc., 236 S.W.3d at 193-94. We cannot conclude that-by deleting the phrase "as part of a rural health network as defined under 42 U.S.C. Section 1395i-4(g)" from section 285.071 's definition of hospital management contractor and yet failing to correspondingly broaden section 285.072 grant of statutory governmental immunity-the legislature intended to create a broad swath of governmental immunity for the types of entities listed in section 285.071, which are not part of the sovereign and would otherwise not be entitled to governmental immunity, for any and all services provided to a hospital via a contract with a hospital district. In the absence of any identifiable reason for such a substantive change to sections 285.071 and 285.072 that BHCS contends the 2003 amendments made, any extratextual indication that one was intended, or any resulting change in industry practice, the most reasonable construction of sections 285.071 and 285.072 is the same as each statute's predecessor. See ids="8363952" index="61" url="https://cite.case.law/sw3d/236/190/#p194">id. And that is the construction we adopt here.
(5) Application
We decline to construe section 285.072 as statutorily conferring immunity on all entities meeting section 285.071 's definition of a hospital district management contractor regardless of whether the hospital district management contractor is acting "in its management or operation of a hospital under a contract with a hospital district" as required by section 285.072.[6] See Tex. Health & Safety Code Ann. §§ 285.071, 285.072. The legislature limited section 285.072 's creation of immunity for entities that are not actual governmental units to entities that manage or operate a hospital under a contract with a hospital district by stating that "[a] hospital district management contractor in its management or operation *255 of a hospital under a contract with a hospital district is considered a governmental unit for purposes of Chapters 101, 102, and 108." See ion index="63" url="https://cite.case.law/citations/?q=Tex.%20Code%20Ann.%20%C2%A7%C2%A7%20285.071">id. § 285.072. To hold otherwise would require us to rewrite and broaden section 285.072 to insert the words "or provision of services to" so that section 285.072 would provide that a hospital district management contractor in its management or operation of-or provision of services to -a hospital under a contract with a hospital district is considered a governmental unit for purposes of Chapters 101, 102, and 108. This we cannot do.[7] See TGS-NOPEC Geophysical Co. v. Combs , 340 S.W.3d 432, 439 (Tex. 2011) (recognizing legislature purposefully omits words not chosen and refusing to judicially insert omitted words). Instead, we take sections 285.071 and 285.072 as we find them and refrain from rewriting the text; the legislature easily could have included both categories of "hospital district management contractor[s]" in section 285.072 's statutorily created immunity, but it did not.
Finally, the construction of section 285.072 urged by BHCS would deprive Peyton of a common-law right-her right to file a suit for negligence against an entity not entitled to sovereign immunity. See Star Enter. v. Marze , 61 S.W.3d 449, 457 (Tex. App.-San Antonio 2001, pet. denied) ("Victims of negligence have a common-law right to sue for their injuries") (citing Diaz v. Westphal , 941 S.W.2d 96, 98 (Tex. 1997) ); see also Tex. Const. art. I, § 13 (providing, in pertinent part, "All courts shall be open, and every person for an injury done him, in his lands, goods, person[,] or reputation, shall have remedy by due course of law"). We recognize that the legislature is free to modify or abrogate common-law rules via statutes, but the Texas Supreme Court has instructed us to do so "only when that was what the [l]egislature clearly intended." Abutahoun , 463 S.W.3d at 51. We have found no indication here that is what the legislature clearly intended.
Based on our review of the affiliation agreement; our consideration of the plain language of section 285.072 ; our consideration of the old law, the evil, and the remedy; our diligent search for indicators of legislative intent to substantively change the prior version of sections 285.071 and 285.072 ; the lack of a clear intent by the legislature to modify or abrogate common-law negligence rights for defined entities not exercising management or operation of a hospital; and the requirement that we defer to the trial court's view of any jurisdictional facts, we hold that BHCS is not entitled to governmental unit status or immunity under section 285.072 because BHCS is not managing or operating Wise Regional.[8] See Combs , 340 S.W.3d at 439 ; cf. Riemenschneider, 2015 WL 9591519, at *2, *4 ;
*256 Ven Huizen , 2011 WL 1900174, at *5. Accordingly, we overrule the dispositive portion of BHCS's sole issue.
IV. CONCLUSION
Having overruled the dispositive portion of BHCS's sole issue after determining that BHCS is not entitled to governmental unit status under section 285.072, and because there is no other available basis for jurisdiction over this interlocutory appeal, we dismiss this appeal for lack of jurisdiction. See Tex. R. App. P. 43.2(f) ; cf. SJ Med. Ctr., L.L.C. v. Estahbanati , 418 S.W.3d 867, 876 (Tex. App.-Houston [14th Dist.] 2013, no pet.) (dismissing appeal for lack of jurisdiction because LLC did not meet section 285.071 's definition of "hospital district management contractor" and was thus not a governmental unit).

The collegial briefing and argument in this appeal permit us to focus on this narrow, sole disputed issue.

To the extent the expert-report and medical-negligence cases cited by BHCS can be construed to support its argument that enforcement of nursing policies and procedures and supervision of nurses may be aspects of hospital management-despite the lack of evidence that BHCS was required to provide such services to Wise Regional-BHCS's cited cases do not support the proposition that providing nurse training services, as pleaded by Peyton, constitutes managing or operating a hospital. See, e.g. , Columbia N. Hills Hosp. v. Alvarez , 382 S.W.3d 619, 626 (Tex. App.-Fort Worth 2012, no pet.) (holding, in expert report case, hospital management consultant qualified to opine on hospital's standard of care); Hollingsworth v. Springs , 353 S.W.3d 506, 514 (Tex. App.-Dallas 2011, no pet.) (same); Drennan v. Cmty. Health Inv. Corp. , 905 S.W.2d 811, 822 (Tex. App.-Amarillo 1995, writ denied) (deciding, in medical negligence case, issue of whether nurse anesthetist was illegally practicing medicine).

BHCS argues that the Fifth Circuit has construed section 285.072 as conferring immunity on entities that are not otherwise governmental units based solely on a contract to provide services to a hospital via a contract with a hospital district. See Jones v. Nueces Cty., Tex. , 589 Fed.Appx. 682, 686 (5th Cir. 2014) (construing section 285.072"as protecting [i.e., creating immunity for] all hospital district management contractors" regardless of whether the hospital district management contractor meets the acting "in its management or operation of a hospital under a contract with a hospital district " requirement when nonprofit corporation provided inmate health care and services under contract with hospital district), cert. denied , --- U.S. ----, 135 S.Ct. 2057, 191 L.Ed.2d 963 (2015) ; Rodriguez v. Christus Spohn Health Sys. Corp. , 628 F.3d 731, 734 (5th Cir. 2010) (stating without analysis that "[s]ince Christus [Christus Spohn Health System Corp., Christus Spohn Hospital Corpus Christi-Memorial, and Christus Health] is a hospital district management contractor, it is entitled to governmental immunity"). These Fifth Circuit cases are not binding on us, and for the reasons set forth herein, we do not follow them. See Penrod Drilling Corp. v. Williams , 868 S.W.2d 294, 296 (Tex. 1993) ; Devon Energy Prod. Co. v. KCS Res., LLC , 450 S.W.3d 203, 221 (Tex. App.-Houston [14th Dist.] 2014, pet. denied) ; see also 5th Cir. R. 47.5.4.

By this deletion, the language remaining in the current statute-"that provides services [ ] under a contract with a hospital district"-lost the meaning of "services" that was incorporated within "as part of a rural health network as defined under 42 U.S.C. Section 1395i-4(g)" language. See Tex. Health & Safety Code Ann. § 285.071. That is, the "as part of a rural health network as defined under 42 U.S.C. Section 1395i-4(g)" language necessarily incorporated the three types of agreements or services required between hospitals and facilities in order for them to jointly constitute a rural health network: "agreements regarding-(A) patient referral and transfer, (B) the development and use of communications systems, ... and (C) the provision of emergency and non-emergency transportation among the members." See Omnibus Budget Reconciliation Act of 1989, Pub. L. No. 101-239, § 1820, 103 Stat. 2106 (current version at 42 U.S.C.A. § 1395i-4(g) (West 2012) ).

We reviewed the legislative history of the 2003 amendments in this context only. Our review included the bill analysis of the 2003 changes to the statute. See History of HB 2845, Texas Legislature Online, http://www.capitol.state.tx.us/BillLookup/History.aspx?LegSess=78R&Bill=HB245 3 (last visited April 6, 2018).

BHCS cites Luchak for the proposition that an entity can be a governmental unit pursuant to section 285.072 even when some management and operation responsibilities are designated to other entities. See 379 S.W.3d at 366-67. But unlike the transfer agreement in Luchak in which all of Huntsville Memorial Hospital's rights and obligations under the lease agreement-including management of the hospital-were transferred to Walker County Hospital Corporation (WCHC), thus making WCHC a governmental unit, the affiliation agreement here specifically provides that only Wise Regional's administration and Board of Directors have control of the management of Wise Regional's operations. Thus, while BHCS's contention that governmental unit status may exist for contractual services short of the complete management or operation of a hospital may be correct, the jurisdictional facts presented to the trial court do not establish that BHCS's affiliation agreement with Wise Regional requires BHCS to manage or operate Wise Regional in any regard; to the contrary, BHCS conceded and the affiliation agreement expressly states that BHCS did not manage or operate Wise Regional in any respect.

BHCS argues that we should not "narrowly" interpret the immunity conferred by section 285.072"to only cover services that are managerial or operational in nature." But the interpretation that BHCS alleges is "narrow" is based on the plain language of section 285.072 -"[a] hospital district management contractor in its management or operation of a hospital ... is considered a governmental unit." See Tex. Health & Safety Code Ann. § 285.072 (emphasis added).

Because we hold that BHCS is not a governmental unit, we need not address the other arguments that BHCS includes under its sole issue-that Peyton did not comply with the TTCA's notice requirements for giving notice of a claim against a governmental unit and that she did not establish that her claim against BHCS is within the TTCA's waiver of governmental immunity. See Tex. R. App. P. 47.1 (providing that appellate court must address every issue raised and necessary for final disposition of appeal).